IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01027-PAB-JPO

WILLIAM J. PEACE, M.D., an individual,

      Plaintiff and Counter Defendant,

v.

PANORAMA ORTHOPEDICS AND SPINE CENTER, INC., d/b/a PANORAMA
ORTHOPEDICS & SPINE CENTER, P.C.,[1]

      Defendant and Counter Claimant.
_____

**ORDER**
_____

      This matter is before the Court on Plaintiff/Counterclaim Defendant's Fed. R. Civ.

P. 12(B)(6) Motion to Dismiss and Fed. R. Civ. P. 12(F) Motion to Strike [Docket No. 35]

filed by Dr. William J. Peace.  Defendant and counter claimant Panorama Orthopedics

and Spine Center, Inc., d/b/a Panorama Orthopedics & Spine Center, P.C.

("Panorama") filed a response.  Docket No. 37.  Dr. Peace filed a reply.  Docket No. 41.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

_____

[1] On June 7, 2023, the Court granted the parties' motion to amend the case
caption to reflect the correct entity name for defendant Panorama Orthopedics and
Spine Center, Inc.  Docket No. 17.

I.      BACKGROUND

A.  **Factual Background**[2]

Dr. Peace is a board-certified orthopedic surgeon and a Lieutenant Colonel in the Colorado Air National Guard.  Docket No. 1 at 1, ¶ 1; Docket No. 34 at 1, ¶ 1. Panorama is a Colorado corporation that provides orthopedic, sports medicine, spine care, joint replacement, imaging, physical therapy, and performance training services at various facilities in Colorado.  Docket No. 1 at 2, ¶¶ 7, 9; Docket No. 34 at 2, ¶¶ 7, 9. Panorama is plaintiff's employer.  Docket No. 34 at 1, ¶ 1.

Panorama's predecessor company, Panorama Orthopedics & Spine Center, P.C. (the "predecessor company"), hired Dr. Peace on October 1, 2012 for a full-time physician position with a base salary of $300,000 per year.  Docket No. 1 at 4, ¶¶ 18, 21; Docket No. 34 at 3, ¶¶ 18, 21.  On January 1, 2016, Dr. Peace became an employee shareholder in the practice.  Docket No. 1 at 4, ¶ 23; Docket No. 34 at 3, ¶ 23.  As an employee shareholder, Dr. Peace is required to contribute to overhead costs, proportionate to his ownership interest, and his current overhead contribution amounts to approximately $850,000 per year.  Docket No. 1 at 5, ¶ 24; Docket No. 34 at 3, ¶ 24.

In early 2022, the predecessor company merged with another company to become Panorama.  Docket No. 1 at 4, 6, ¶¶ 18, 33; Docket No. 34 at 3-4, ¶¶ 18, 33.  In June 2022, Panorama re-negotiated Dr. Peace's employment agreement, which

_____

[2] The facts below are taken from the amended answer, Docket No. 34, and are presumed to be true for purposes of ruling on Dr. Peace's motion to dismiss.  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).  This section also includes facts from plaintiff's complaint that Panorama admitted in its answer.

superseded his prior agreement from 2012.  Docket No. 1 at 6, ¶ 34; Docket No. 34 at 4, ¶ 34.

On June 27, 2022, Dr. Peace signed a Letter of Transmittal for Equity Interests ("Letter of Transmittal") as part of the Agreement and Plan of Merger ("Merger Agreement") that Panorama entered into.  Docket No. 34 at 8, ¶ 1.[3]  The Letter of Transmittal states

> By executing and delivering this Letter of Transmittal, the undersigned hereby acknowledges that he or she hereby approves of the Merger Agreement and the transactions contemplated thereby and is becoming a party to the Merger Agreement as a 'Seller' for all purposes thereunder.  Further, the undersigned hereby acknowledges and agrees to the terms and conditions set forth in the Merger Agreement[.]

*Id.*, ¶ 2; *see also* Docket No. 35-2 at 6.  Dr. Peace appointed Mark J. Conklin, M.D., as "Sellers' Representative to act on the undersigned's behalf pursuant to and in accordance with the Merger Agreement."  Docket No. 35-2 at 7.

---

[3] Dr. Peace requests that the Court consider several documents outside the pleadings, including the Letter of Transmittal and the Merger Agreement.  Docket No. 35 at 4-6 (citing Docket Nos. 35-1, 35-2).  Generally, a court should not consider evidence beyond the pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and if the court considers matters outside the complaint, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Waller*, 932 F.3d at 1282; *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").  Panorama does not contest the authenticity of the documents.  *See* Docket No. 37 at 5, 7.  The Court will consider the Letter of Transmittal and the Merger Agreement because the documents are referenced in Panorama's pleading, are central to the breach of contract counterclaim, and the parties do not dispute the documents' authenticity.  *See* Docket No. 34 at 8-9, ¶¶ 1-16.

On June 29, 2022, Panorama executed the Merger Agreement.  Docket No. 34 at 8, ¶ 3.  The closing of the Merger Agreement occurred on July 19, 2022.  *Id*., ¶ 4.  Dr. Peace is a "Seller" under the Merger Agreement.  *Id*., ¶ 5.  Under Section 7.9 of the Merger Agreement, Dr. Peace agreed to release and discharge all potential claims he may have had against Panorama prior to the closing date.  *Id*., ¶ 6.  Specifically, Section 7.9(a) states that

> Effective as of the Closing, each Seller on such Seller's own behalf and on behalf of such Seller's past, present and future Affiliates, agents, attorneys, administrators, heirs, executors, Related Parties, trustees, beneficiaries, representatives, successors and assigns claiming by or through such Seller (collectively, the "Related Persons"), hereby absolutely, unconditionally and irrevocably RELEASES and FOREVER DISCHARGES each Target Company and their respective past, present and future directors, managers, members, equity holders, officers, employees, agents, Subsidiaries, Affiliates, attorneys, representatives, successors and assigns (each, a "Released Party" and collectively, the "Released Parties") from the following (collectively, the "Releasing Party Claims"): all claims (including any derivative claim on behalf of any Person), actions, causes of action, suits, arbitrations, proceedings, debts, liabilities, obligations, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, fees, expenses, judgments, executions, indemnification rights, claims and demands arising out, relating to, against or in any way connected with a Released Party, including any and all actions, activities, assets, liabilities and the ownership of any securities, whether known or unknown, suspected or unsuspected, absolute or contingent, direct or indirect or nominally or beneficially possessed or claimed by such Seller, whether the same be in administrative proceedings, in arbitration, at law, in equity or mixed, which such Seller ever had, now has or hereafter may have against any or all of the Released Parties, in each case, in respect of any and all agreements, liabilities or obligations entered into or incurred on or prior to the Closing, or in respect of any event occurring or circumstances existing on or prior to the Closing, whether or not relating to claims pending on, or asserted after, the Closing; provided, however, the foregoing release does not extend to, include or restrict or limit in any way, and such Seller hereby reserves such Seller's rights, if any, to pursue any and all Releasing Party Claims that such Seller may now or in the future have solely on account of (i) rights of such Seller under this Agreement and (ii) any rights or claims for benefits (other than any severance or deferred compensation) under benefit plans of any Target Company.

Docket No. 35-1 at 1-2.  Section 7.9(b) further provides that

> Effective as of the Closing, each Seller hereby expressly waives any rights such Seller may have under applicable Laws to preserve Releasing Party Claims which such Seller does not know or suspect to exist in such Seller's favor at the time of executing the release provided in Section 7.9(a).  Each Seller understands and acknowledges that such Seller may discover facts different from, or in addition to, those which such Seller knows or believes to be true with respect to the claims released herein, and agrees that the release provided in Section 7.9(a) shall be and remain effective in all respects notwithstanding any subsequent discovery of different or additional facts.

*Id*. at 2.  Under Section 7.9(c), Dr. Peace agreed to refrain from commencing any suit against Panorama based on the released claims.  Docket No. 34 at 8, ¶ 7; *see also* Docket No. 35-1 at 2.

Dr. Peace received substantial monetary compensation in consideration for signing the Letter of Transmittal and agreeing to the terms of the Merger Agreement. Docket No. 34 at 8, ¶ 8.  The consideration that Dr. Peace received in return for signing the Letter of Transmittal exceeds the damages he seeks in this case and exceeds the value of any claims he released in the Merger Agreement.  *Id*. at 9, ¶ 9.  Panorama has performed its obligations under the Merger Agreement.  *Id*., ¶ 13.  Panorama has incurred damages.  *Id*., ¶ 16.

### B.  Procedural Background

On April 24, 2023, Dr. Peace filed this case.  Docket No. 1.  Dr. Peace asserts two claims against Panorama: (1) a claim for discrimination under the Uniform Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311 *et seq*.; and (2) a claim for a permanent injunction.  *Id*. at 7-9, ¶¶ 39-56.[4]  Specifically, Dr. Peace

---

[4] Dr. Peace's complaint also included claims against another defendant, United Musculoskeletal Partners, LLC.  Docket No. 1.  However, on June 16, 2023, the parties agreed to dismiss all claims against United Musculoskeletal Partners, LLC without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  *See* Docket Nos. 19-20.

alleges that Panorama violated USERRA by (i) charging Dr. Peace for overhead contributions while he was on military leave; and (ii) informing Dr. Peace that he would be limited to eight weeks of military leave per year.  *Id*. at 5-7, ¶¶ 28-29, 31-32, 36-37, 42-43.  On July 28, 2023, Dr. Peace filed a notice of computation of damages, stating that he is seeking economic damages for overhead contributions from 2016 to the present.  Docket No. 29 at 2.

On September 6, 2023, Panorama filed an amended answer, asserting the affirmative defense of laches, Docket No. 34 at 7, ¶ 1, as well as a counterclaim against Dr. Peace for breach of contract.  *Id*. at 8-9, ¶¶ 1-16.  Panorama alleges that Dr. Peace breached his contractual obligations under the Letter of Transmittal and Merger Agreement when he filed this lawsuit because Dr. Peace released any claims against Panorama that arose prior to the closing date, July 19, 2022.  *Id*. at 9, ¶¶ 10, 12, 15.  On September 27, 2023, Dr. Peace filed a motion requesting that the Court dismiss Panorama's counterclaim under Fed. R. Civ. P. 12(b)(6) and strike Panorama's affirmative defense of laches under Fed. R. Civ. P. 12(f).  Docket No. 35.

## II.   LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken*

*Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B.  Fed. R. Civ. P. 12(f)

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

However, motions under Rule 12(f) are viewed with disfavor, both because striking a portion of a pleading is a drastic remedy and because such motions are often used as a dilatory or harassing tactic.  *A1 Garage Door Serv., L.L.C. v. West*, No. 21-cv-01821-PAB-NRN, 2022 WL 952874, at *1 (D. Colo. Mar. 30, 2022) (collecting cases); *see also* 5C Arthur R. Miller et al., *Fed. Prac. & Proc.* § 1380 (3d ed. June 2024).  Thus, motions to strike are typically granted only when the allegations have no bearing on the controversy and the movant can show prejudice.  *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001).  "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance."  *Chavez v. Bd. of Cnty. Comm'rs of Lake Cnty.*, 423 F. Supp. 3d 1106, 1108 (D. Colo. 2019) (quoting *FDIC v. Isham*, 782 F. Supp. 524, 530 (D. Colo. 1992)).  An affirmative defense, however, "should not be stricken if there is any real doubt about its validity, and the benefit of any doubt should be given to the pleader."  *Sender v. Mann*, 423 F. Supp. 2d 1155, 1163 (D. Colo. 2006) (citation, alterations, and internal quotations omitted).  Whether to strike a portion of a pleading is within the trial court's discretion. *Scherer v. Dep't of Educ.*, 78 F. App'x 687, 689 (10th Cir. 2003) (unpublished) (reviewing a district court's ruling on a motion to strike for abuse of discretion); *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1030-31 (D. Colo. 2014); *see also* Fed. R. Civ. P. 12(f) (denoting only that allegations that are subject to Rule 12(f) "may" be stricken).

Courts in this district have held that the requirement that a complaint set forth sufficient factual matter allowing for a reasonable inference that the pleader is entitled to relief, as set forth in *Twombly* and *Iqbal*, does not apply to affirmative defenses.  *See,*

*e.g.*, *Crocs, Inc. v. Joybees, Inc.*, No. 21-cv-02859-PAB-MEH, 2022 WL 4603583, at *8 (D. Colo. Sept. 30, 2022); *Alarid v. Biomet, Inc.*, No. 14-cv-02667-REB-NYW, 2015 WL 6376171, at *2 (D. Colo. Sept. 22, 2015); *Malibu Media, LLC v. Benson*, No. 13-cv-02394-WYD-MEH, 2014 WL 2859618, at *2 (D. Colo. June 20, 2014) (holding that "an affirmative defense is sufficient if stated 'in short and plain terms' pursuant to Rule 8(b)(1)(A), and if the movant fails to demonstrate that the defense cannot succeed under any circumstance"); *Holdbrook v. SAIA Motor Freight Line, LLC*, No. 09-cv-02870-LTB-BNB, 2010 WL 865380, at *2 (D. Colo. Mar. 8, 2010) (finding it "reasonable to impose stricter pleading requirements on a plaintiff who has significantly more time to develop factual support for his claims than a defendant who is only given 20 days to respond to a complaint and assert its affirmative defenses" and concluding that an affirmative defense should not be held to the *Iqbal/Twombly* standard "particularly in light of the disfavored status of motions to strike").

## III.    ANALYSIS

Dr. Peace moves to dismiss Panorama's breach of contract counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Docket No. 35 at 1. Additionally, Dr. Peace requests that the Court strike Panorama's affirmative defense of laches pursuant to Fed. R. Civ. P. 12(f).  *Id.*

## A.  __Breach of Contract Counterclaim__[5]

To state a counterclaim for breach of contract under Colorado law, Panorama must allege (1) the existence of a contract; (2) performance by Panorama or some justification for nonperformance; (3) failure to perform the contract by Dr. Peace; and (4) damages to Panorama.  *See Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2716652, at *10 (D. Colo. Mar. 30, 2023); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (collecting cases).

First, Dr. Peace argues that the Court should dismiss Panorama's breach of contract counterclaim because USERRA "supersedes" the release of liability found in Section 7.9 of the Merger Agreement.  Docket No. 35 at 7-10.  Second, Dr. Peace argues that, even if the release in Section 7.9 is valid, Dr. Peace's USERRA claim "is for a benefit that is excepted from the release" under Section 7.9(a).  *Id.* at 10-11.

As a preliminary matter, Dr. Peace failed to comply with this Court's Practice Standards for Rule 12(b)(6) motions because Dr. Peace did not clearly identify which elements of the counterclaim he challenges.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.2.a.i ("For each claim for relief that the movant seeks to dismiss pursuant to Rule 12(b)(6), *clearly enumerate each element* that movant contends must be alleged, but was not." (emphasis added)).  Nevertheless, the

---

[5] Dr. Peace does not address which state's law would apply to the breach of contract counterclaim.  Panorama appears to assert that Colorado law would apply to this counterclaim.  *See* Docket No. 37 at 6 (citing Colorado case law to show that a "contract may consist of two or more writings").  At the motion to dismiss stage, the Court presumes that Colorado law applies to the breach of contract counterclaim.  *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

Court construes Dr. Peace's first argument as raising an affirmative defense and construes his second argument as challenging the third element of the breach of contract claim.

### 1)  Whether USERRA Supersedes the Release

Dr. Peace's first argument is that the Court should dismiss Panorama's breach of contract claim because 38 U.S.C. § 4302(b) "supersedes" the release in Section 7.9. Docket No. 35 at 7-10.  The Court construes this argument as raising an affirmative defense.  *See Fryer v. A.S.A.P. Fire & Safety Corp.*, 658 F.3d 85, 90 (1st Cir. 2011) (noting that section 4302 is a "defense of preemption"); *Gardner v. United States*, 316 F. Supp. 3d 1308, 1315 (D. Utah 2018) (holding that "preemption is an affirmative defense") (citing *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 634 (2011); *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1092 (10th Cir. 2015))).  The counter defendant has the burden of pleading an affirmative defense.  *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (noting that a plaintiff "need not anticipate" an affirmative defense in its pleading).  As a result, a court may consider an affirmative defense at the motion to dismiss stage "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."  *Id*.

One of the purposes of USERRA is "to prohibit discrimination against persons because of their service in the uniformed services."  *Lewis v. Rite of Passage, Inc.*, 217 F. App'x 785, 786 (10th Cir. 2007) (unpublished) (quoting 38 U.S.C. § 4301(a)(3)). Section 4302(b) provides that USERRA

> supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including

the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302(b).  However, the application of section 4302(b) is limited by section 4302(a), which provides that

> [n]othing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.

38 U.S.C. § 4302(a); *see also Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1107 (6th Cir. 2010).  Courts have "recognized that the text and legislative history of USERRA indicate that a veteran may waive his rights under the statute."  *Tolle v. PocketSonics, Inc.*, 342 F. Supp. 3d 695, 701 (W.D. Va. 2018) (citing *Wysocki*, 607 F.3d at 1108).  The "critical inquiry" is whether the rights or benefits that the waiver provides are "more beneficial" than the rights or benefits the service member agreed to give up. *Id*. at 702; *see also Wysocki*, 607 F.3d at 1107; *Ziegler v. Dep't of the Interior*, 2022 WL 1435385, at *4 (Fed. Cir. May 6, 2022); *Ward v. Shelby Cnty., Tenn.*, 98 F.4th 688, 692 (6th Cir. 2024).  Furthermore, to be enforceable, a waiver must also be "clear and unambiguous."  *Wysocki*, 607 F.3d at 1108; *Tolle*, 342 F. Supp. 3d at 701; *Ziegler*, 2022 WL 1435385, at *4.

Dr. Peace argues that the Court should find that USERRA supersedes Section 7.9's release in the Merger Agreement for two reasons.  Docket No. 35 at 8-10.  First, Dr. Peace contends that the release in Section 7.9 is invalid because Dr. Peace did not sign the Merger Agreement.  *Id*. at 8-9.  Although he signed the Letter of Transmittal, Dr. Peace states that his signature on that document "did not grant the Sellers' representative the authority to sign away Dr. Peace's USERRA rights."  *Id*. at 9.  Dr.

Peace argues that Panorama "points to no document where Dr. Peace himself release[d] any claims." *Id*. Panorama responds that Dr. Peace's signature on the Letter of Transmittal was sufficient to bind him to the release provision in the Merger Agreement. Docket No. 37 at 5-6. Panorama argues that, under Colorado law, a "party need not sign every page of a contract for the whole of the document to be effective," and that a "contract may consist of two or more writings when so intended and relating to the same subject matter." *Id*. at 6 (quoting *Master Palletizer Sys., Inc. v. T.S. Ragsdale Co.*, 725 F. Supp. 1525, 1531 (D. Colo. 1989)).

The Court rejects Dr. Peace's first argument. Under Colorado law, a "party need not sign every page of a contract for the whole of the document to be effective." *Clowdis v. Colo. Hi-Tec Moving & Storage, Inc.*, No. 11-cv-00036-CMA-KMT, 2011 WL 5882191, at *6 (D. Colo. Nov. 3, 2011), *recommendation adopted*, 2012 WL 895701 (D. Colo. Mar. 15, 2012) (quoting *Master Palletizer Sys., Inc.*, 725 F. Supp. at 1531). Additionally, a "contract may consist of two or more writings when so intended and relating to the same subject matter." *Master Palletizer Sys., Inc.*, 725 F. Supp. at 1531 (citing *Grizzly Bar, Inc. v. Hartman*, 454 P.2d 788 (1969)). For "an incorporation by reference to be effective, 'it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'" *Liquid Magnetix Corp. v. Therma-Stor LLC*, No. 13-cv-03151-WJM-KMT, 2014 WL 1389984, at *2 (D. Colo. Apr. 9, 2014) (quoting *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman–Marcus Grp., Inc.*, 251 P.3d 1091, 1095 (Colo. App. 2010)). "So long as it is clear what document is being referred to and that the parties intended for it to be a part of the agreement, it is as effectively a part thereof as if recited therein." *Id*. (quoting *In re Seymour's Marriage*,

536 P.2d 1172, 1175 (Colo. App. 1975)) (internal alterations omitted).  Here, Dr. Peace signed the Letter of Transmittal on June 27, 2022.  Docket No. 34 at 8, ¶ 1.  The Letter of Transmittal states

> By executing and delivering this Letter of Transmittal, the undersigned hereby acknowledges that he or she hereby approves of the Merger Agreement and the transactions contemplated thereby and is becoming a party to the Merger Agreement as a 'Seller' for all purposes thereunder.  Further, the undersigned *hereby acknowledges and agrees to the terms and conditions set forth in the Merger Agreement*[.]

*Id.*, ¶ 2 (emphasis added); *see also* Docket No. 35-2 at 6.  The Court finds that the Merger Agreement was incorporated by reference into the Letter of Transmittal because Dr. Peace explicitly agreed to be bound by "the terms and conditions set forth in the Merger Agreement."  *See* Docket No. 34 at 8, ¶ 2; *see also Liquid Magnetix Corp.*, 2014 WL 1389984, at *2.  Dr. Peace's argument that he did not sign the Merger Agreement is irrelevant because Dr. Peace signed the Letter of Transmittal.  As a result, the Court rejects Dr. Peace's first argument.

Second, Dr. Peace contends that the release in Section 7.9 is invalid because the release is not "an unambiguous and clear waiver of Dr. Peace's rights under USERRA."  Docket No. 35 at 9-10.  Dr. Peace asserts that, in order to be valid, a USERRA waiver must explicitly "waive the service-member's USERRA rights."  *Id.* at 9 (citing *Wysocki*, 607 F.3d at 1108).  Dr. Peace argues that Section 7.9 is a "catch-all" disclaimer that does not reference USERRA, veteran status, or military service obligations.  *Id.* at 9-10.  Panorama responds that the Court should reject plaintiff's argument because "USERRA only requires that the release be clear and unambiguous, *not* that it explicitly reference USERRA or any related status."  Docket No. 37 at 6.  Panorama argues that many courts have enforced contractual releases that do not

14

explicitly mention USERRA.  *Id*. at 6-7 (citing *Ziegler*, 2022 WL 1435385, at *4; *Tolle v. PocketSonics, Inc*., 2018 WL 1161142, at *3 (W.D. Va. Mar. 5, 2018); *Cornelius v. United Parcel Serv., Inc*., 2012 WL 975053, at *1 (S.D.N.Y. Mar. 21, 2012)).[6] Panorama asserts that, in Section 7.9(a) of the Merger Agreement, Dr. Peace clearly and unambiguously waived "all claims" that arose prior to the closing.  *Id*. at 7.

The Court finds that the language in Section 7.9 of the Merger Agreement is sufficiently clear and unambiguous to waive Dr. Peace's USERRA rights.  Dr. Peace agreed to "absolutely, unconditionally and irrevocably RELEASE[] and FOREVER DISCHARGE[]" Panorama from "all claims . . ., actions, causes of action, suits . . . arising out, relating to, against or in any way connected with" Panorama prior to the closing date.  Docket No. 35-1 at 1-2.  Dr. Peace also agreed to waive his rights to any claims "which such Seller does not know or suspect to exist in such Seller's favor at the time of executing the release."  *Id*. at 2.  Many courts have upheld similar broad releases that do not specifically reference USERRA or military status.  *See, e.g.*, *Ziegler*, 2022 WL 1435385, at *4 (finding that the waiver language was "clear and unambiguous" where service member agreed to release the agency from "any and all appeals, complaints, claims . . . up to and including the effective date of this Settlement Agreement"); *Tolle*, 2018 WL 1161142, at *3 (holding that the severance agreement "used clear and unambiguous language to waive the plaintiff's USERRA rights" because it expressly stated that plaintiff waives "any and all" claims in connection with his

---

[6] In his reply, Dr. Peace contends that defendant's cited cases are distinguishable because those plaintiffs did not waive their USERRA rights "by means of an intermediate agreement or third-party."  Docket No. 41 at 2-3.  Because the Court previously found that the Merger Agreement was incorporated by reference into the Letter of Transmittal, the Court rejects this argument in Dr. Peace's reply.

employment); *Cornelius*, 2012 WL 975053, at *1 (finding that the release clearly waived plaintiff's USERRA claims because plaintiff agreed to "unconditionally release [defendant] from all known or unknown claims"); *Ward*, 98 F.4th at 691-92 (holding that the release provision "patently encompassed" plaintiff's USERRA claim because the provision stated that plaintiff agreed to release "any and all claims whatsoever").

The Court rejects Dr. Peace's argument that a release waiver is only valid if it explicitly mentions USERRA. Dr. Peace cites *Wysocki* in support of that argument. Docket No. 35 at 9 (citing *Wysocki*, 607 F.3d at 1108). In *Wysocki*, the Sixth Circuit found that a release provision clearly and unambiguously waived the plaintiff's USERRA rights because the provision stated that it covered claims based on "veteran status." *Wysocki*, 607 F.3d at 1108. However, recently, the Sixth Circuit rejected the argument that a valid release under § 4302 must contain a reference to "veteran status" or USERRA claims. *Ward*, 98 F.4th at 692 ("That in *Wysocki* the court chose to highlight the term 'veteran status'—among all the belts and suspenders the release employed there—did not make that term magic words necessary for release of a USERRA claim . . . . Nor did the absence of that term create any ambiguity here."). Accordingly, the Court finds that the language in Section 7.9 is sufficiently clear and unambiguous to waive Dr. Peace's USERRA rights. The Court therefore rejects Dr. Peace's second argument.

Dr. Peace does not address the "critical inquiry" under § 4302, namely, whether the waiver provides "more beneficial" rights or benefits than Dr. Peace agreed to give up. *See Tolle*, 342 F. Supp. 3d at 702; *Wysocki*, 607 F.3d at 1107. Panorama's counterclaim alleges that the consideration that Dr. Peace received in return for signing

the Letter of Transmittal exceeds the damages he seeks in this case and exceeds the value of any claims he released in the Merger Agreement.  Docket No. 34 at 9, ¶ 9.  At the motion to dismiss stage, this allegation is sufficient to establish that the waiver provides more beneficial rights.[7]

Because Dr. Peace has failed to establish that 38 U.S.C. § 4302(b) supersedes the release in Section 7.9, the Court denies this portion of Dr. Peace's motion.

### 2)  *Third Element of the Breach of Contract Counterclaim*

Alternatively, Dr. Peace argues that, even if the release in Section 7.9 is valid, Dr. Peace's USERRA claim "is for a benefit that is excepted from the release" under Section 7.9(a).  Docket No. 35 at 10-11.  The Court presumes that Dr. Peace's second argument contests the third element of a breach of contract claim, namely, Dr. Peace's alleged failure to perform the contract.  Dr. Peace states that, pursuant to Section 7.9(a), he reserved the right to pursue any "claims for benefits . . . under benefit plans" of Panorama.  *Id.* at 10.  Dr. Peace argues that his USERRA claim for the "overhead contribution amount" is an employment benefit.  *Id.* at 11.  Because his claim is excepted from the release, Dr. Peace appears to argue that he did not breach the contract.  *See id.*

Panorama responds that the "overhead obligations" are not a benefit plan under the Merger Agreement.  Docket No. 37 at 8.  Panorama contends that plaintiff's

---

[7] Courts have noted that evidence of "mistake, incapacity, fraud, misrepresentation, unconscionability, or duress" could invalidate a contractual release under section 4302.  *Wysocki*, 607 F.3d at 1108; *see also Ziegler*, 2022 WL 1435385, at *4; *Ward*, 98 F.4th at 693.  However, Dr. Peace does not argue that he signed the Letter of Transmittal due to mistake, incapacity, fraud, misrepresentation, unconscionability, or duress.

responsibility to pay overhead expenses as a partner in the business is different from an employee benefit plan. *Id.* at 9. Panorama contends that there are no allegations in its pleading suggesting that Panorama implemented a benefit plan to reduce partners' overhead obligations. *Id.*

At the motion to dismiss stage, the Court agrees with Panorama. Section 7.9(a) provides that

> the foregoing release does not extend to, include or restrict or limit in any way, and such Seller hereby reserves such Seller's rights, if any, to pursue any and all Releasing Party Claims that such Seller may now or in the future have solely on account of (i) rights of such Seller under this Agreement and (ii) *any rights or claims for benefits (other than any severance or deferred compensation) under benefit plans* of any Target Company.

Docket No. 35-1 at 2 (emphasis added). However, there are no allegations in Panorama's pleading suggesting that Panorama's benefit plan encompassed overhead contributions by shareholders. As a result, Dr. Peace's USERRA claim, alleging that Panorama charged him for overhead contributions while on military leave, does not clearly fall within the exception in Section 7.9(a).

Panorama's counterclaim alleges that, under Section 7.9(c) of the Merger Agreement, Dr. Peace agreed to refrain from commencing any suit against Panorama based on the released claims. Docket No. 34 at 8, ¶ 7. On April 24, 2023, Dr. Peace filed this case, alleging that Panorama violated USERRA by (i) charging Dr. Peace for overhead contributions while he was on military leave; and (ii) informing Dr. Peace that he would be limited to eight weeks of military leave per year. Docket No. 1 at 5-7, ¶¶ 28-29, 31-32, 36-37, 42-43; *see also* Docket No. 34 at 9, ¶ 10. The Court finds that these allegations are sufficient at the motion to dismiss stage to establish that plaintiff

breached his contractual obligations under the Letter of Transmittal and the Merger Agreement.  Accordingly, the Court denies this portion of Dr. Peace's motion.

### B.  Latches Defense

Dr. Peace argues that the Court should strike Panorama's affirmative defense of laches in its answer because there is no statute of limitations for USERRA claims. Docket No. 35 at 12.  Dr. Peace asserts that section 4327(b) provides that there "shall be no limit on the period for filing" a claim under USERRA.  *Id*.  Alternatively, Dr. Peace argues that the Court should strike the laches defense because Panorama "has not alleged any facts plausibly supporting Dr. Peace's delay in bringing suit."  *Id*. at 13.

Panorama responds that the Court should deny Dr. Peace's motion to strike because Dr. Peace has failed to show that the laches defense cannot succeed under any circumstances.  Docket No. 37 at 9.  Panorama argues that many courts have applied laches in USERRA cases.  *Id*. (citing *Mahone v. Amazon.com, Inc*., 2023 WL 2837164, at *4-5 (W.D. Wash. Apr. 7, 2023)).  Moreover, Panorama asserts that the *Iqbal/Twombly* pleading standard does not apply to affirmative defenses.  *Id*. at 4. Panorama contends that whether Dr. Peace's "delay was undue and the extent of the prejudice to Panorama are questions of fact that cannot be decided on the pleadings." *Id*. at 10.

The Court finds that Dr. Peace has failed to show that the laches defense "cannot succeed under any circumstance."  *See Chavez*, 423 F. Supp. 3d at 1108. Many courts have found that, even though USERRA has no statute of limitations, the equitable defense of laches can apply to USERRA claims.  *See, e.g., Mahone*, 2023 WL 2837164, at *4-5 (finding that "laches remains a valid defense" for USERRA claims,

"though it should be used sparingly"); *Garner v. Yellow Freight Sys.*, *Inc.*, 19 F. App'x 834, 836 (10th Cir. 2001) (unpublished) (affirming dismissal of USERRA claim based on the affirmative defense of laches); *Durr v. Merit Sys. Prot. Bd.*, 2022 WL 16943007, at *1 (Fed. Cir. Nov. 15, 2022) (same); *Travers v. FedEx Corp.*, 567 F. Supp. 3d 542, 547 (E.D. Pa. 2021) ("Congress did not bar laches defenses to [USERRA] claims through the Act's 2008 amendment in subsection 4327(b)"); *Clarkson v. Alaska Airlines, Inc.*, 2020 WL 5899398, at *4 (E.D. Wash. Oct. 5, 2020) (collecting cases holding that laches continues to be a valid defense after the 2008 USERRA amendments).  Moreover, USERRA regulations recognize that, "if an individual unreasonably delays asserting his or her rights, and that unreasonable delay causes prejudice to the employer, the courts have recognized the availability of the equitable doctrine of laches to bar a claim under USERRA."  *Mahone*, 2023 WL 2837164, at *5 (quoting 20 C.F.R. § 1002.311).  Dr. Peace has identified no statute or case law suggesting that laches is not a valid defense for a USERRA claim.[8]

Furthermore, the Court declines to strike the laches defense based on plaintiff's argument that Panorama has not plausibly alleged any facts supporting this affirmative defense.  *See Crocs, Inc.*, 2022 WL 4603583, at *8 (holding that the plausibility standard of *Iqbal* and *Twombly* does not apply to affirmative defenses).  The Court finds that the affirmative defense is sufficiently pled "in short and plain terms" pursuant to

---

[8] Dr. Peace cites *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002), in support of his argument that laches should not apply to USERRA suits.  Docket No. 35 at 12.  However, *Jarrow Formulas* did not involve a claim under USERRA; rather, the court analyzed whether laches would apply to a claim for false advertising under the Lanham Act.  *Jarrow Formulas, Inc.*, 304 F.3d at 835-38.  Accordingly, the Court finds that *Jarrow Formulas* is not on point.

Rule 8(b)(1)(A).  *See id*. at *9.  Accordingly, the Court denies the portion of Dr. Peace's motion requesting that the Court strike the laches defense under Rule 12(f).

**IV.     CONCLUSION**

It is therefore

**ORDERED** that Plaintiff/Counterclaim Defendant's Fed. R. Civ. P. 12(B)(6) Motion to Dismiss and Fed. R. Civ. P. 12(F) Motion to Strike [Docket No. 35] is **DENIED**.

DATED September 9, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge