IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01027-PAB-TPO

WILLIAM J. PEACE, an individual,

      Plaintiff and Counter Defendant,

v.

PANORAMA ORTHOPEDICS AND SPINE CENTER, INC., d/b/a PANORAMA
ORTHOPEDICS & SPINE CENTER, P.C.,

      Defendant and Counter Claimant.

---

## ORDER

---

This matter comes before the Court on the motion for summary judgment of
defendant and counter claimant Panorama Orthopedics and Spine Center, Inc., d/b/a
Panorama Orthopedics & Spine Center, P.C. [Docket No. 52]. Plaintiff and counter
defendant William J. Peace filed a response. Docket No. 58. Panorama filed a reply.
Docket No. 64.

Panorama Orthopedics and Spine Center, Inc., d/b/a Panorama Orthopedics &
Spine Center, P.C. ("Panorama") moves for summary judgment on Dr. Peace's claim for
discrimination under the Uniform Services Employment and Reemployment Rights Act
("USERRA"), 38 U.S.C. §§ 4311–4335. Docket No. 52 at 2. Panorama also moves for
summary judgment on Panorama's affirmative defense that Dr. Peace waived any
claims under USERRA that arose before July 18, 2022 pursuant to the Letter of
Transmittal for Equity Interests ("Letter of Transmittal") that Dr. Peace signed as part of
the Agreement and Plan of Merger ("Merger Agreement") when Panorama merged with

United Musculoskeletal Partners ("UMP").  *Id.*  Finally, Panorama moves for summary

judgment on its breach of contract counterclaim against Dr. Peace.  *Id.*

## I.    UNDISPUTED FACTS

Panorama is a corporation that provides orthopedic, sport medicine, spine care,

joint replacement, imaging, physical therapy, and performance training services at

various facilities in Colorado.  *Id.* at 3, ¶ 2.  Dr. Peace entered into an employment

agreement with Panorama Orthopedics & Spine Center, P.C., defendant Panorama

Orthopedics and Spine Center, Inc.'s predecessor, on October 1, 2012.[1]  *Id.*, ¶ 3.  Dr.

Peace informed Panorama that he was a member of the Air National Guard and that he

was required to take periodic military leave to fulfill his military obligations.  *Id.*, ¶ 4.

Panorama assured Dr. Peace that his military obligations would not be an issue and

that it supported his military service.  *Id.*, ¶ 5.

Dr. Peace started working at Panorama on October 1, 2012.  *Id.*, ¶ 6.  On

January 1, 2016, Dr. Peace became an employee-shareholder at Panorama.  *Id.*, ¶ 7.

Dr. Peace and Panorama entered into a new employment agreement in June 2022.  *Id.*

at 4, ¶ 10.  As an employee-shareholder, Dr. Peace agreed to the Physician-Partner

Compensation Plan (the "Compensation Plan"), which has remained materially the

same from the time he agreed to the original Compensation Plan in 2016 to the current

Compensation Plan that took effect in 2022.  *Id.* at 7, ¶¶ 31–37.  Dr. Peace, as an

employee-shareholder, is required to contribute to Panorama's overhead costs

---

[1] Both parties refer to defendant Panorama Orthopedics and Spine Center, Inc. and its predecessor Panorama Orthopedics & Spine Center, P.C. as "Panorama."  The Court will do the same unless the distinction is relevant to the Court's ruling on a given argument.

proportionate to his ownership interest. *Id*. at 8, ¶ 40. Overhead expenses accrue for

Panorama regardless of whether an employee-shareholder is working or on leave. *Id*.,

¶ 39. The Compensation Plan provides that adjustments to overhead allocations can

be made for the president, chief medical officer, new employee-shareholders,

employee-shareholders on approved senior status, (collectively, "special-status

partners") and for those employee-shareholders with a disability. *Id*., ¶ 43. In April

2021, Panorama adopted a Bereavement Policy where employee-shareholders on

bereavement leave for the death of a spouse or child would automatically receive

overhead costs reductions. *Id*. at 8–9, ¶ 44. Overhead reductions for bereavement

leave are limited to one month and up to $65,000 in overhead. *Id*. at 9, ¶ 45. A

disabled employee-shareholder can receive an overhead reduction through an

agreement by which the other employee-shareholders cover the disabled employee-

shareholder's income while he or she is disabled. *Id*. at 10, ¶ 53.

     In June 2021, Dr. Peace first raised with Panorama the issue of the overhead

contributions he owed while on military leave, stating that he should not owe overhead

while on military duty. *Id*. at 9, ¶ 46. From July 2021 to the present, Panorama agreed

to reduce Dr. Peace's overhead obligations by 80% for up to eight weeks of military

leave per year. *Id*., ¶ 47. Between 2021 and 2023, Panorama reduced Dr. Peace's

overhead obligation by a total of $334,489,04. *Id*., ¶ 49. Since becoming an employee-

shareholder, Dr. Peace took the following military leave.[2]

---

[2] The Court does not include in this list the military leave that Dr. Peace took
starting on July 22, 2023 because the Point Credit Summary ("PCS") that reflects Dr.
Peace's military leave may not reflect the actual number of days "due to a lag between
actual days served and when such days are reflected in the PCS." Docket No. 52 at 4–
5, ¶ 14 n.3.

a.  January 9, 2016 to July 21, 2016: 26 days.
b.  July 22, 2016 to July 21, 2017: 82 days.
c.  July 22, 2017 to July 21, 2018: 55 days
d.  July 22, 2018 to July 21, 2019: 52 days
e.  July 22, 2019 to July 21, 2020: 68 days
f.  July 22, 2020 to July 21, 2021: 47 days
g.  July 22, 2021 to July 21, 2022: 112 days
h.  July 22, 2022 to July 21, 2023: 67 days

*Id*. at 4, ¶ 14.  Dr. Peace takes approximately two to four days of military leave per

month for paid inactive duty, two weeks of military leave for annual tour, and when on

active duty, Dr. Peace's leave can "amount to months at a time."  *Id*. at 5, ¶¶ 17–20.

The following employee-shareholders received overhead reductions in

connection with taking leave:

a.  In 2021, Panorama reduced Dr. Mitch Seemann's overhead by
$35,750.21 due to eight weeks of disability leave, using the formula in the
Compensation Plan.
b.  In 2021, Panorama reduced Dr. Ron Hugate's overhead by $25,755.60
due to two weeks of bereavement leave, according to the policy applicable
upon death of a spouse or child.
c.  In 2023, Panorama reduced Dr. Karen Knight's overhead by $182,425.43
due to approximately 21 weeks of disability leave, using the formula in the
Compensation Plan.

*Id*. at 10, ¶ 50.[3]

In July 2022, Panorama merged with UMP and each employee-shareholder,

including Dr. Peace, signed a Signature Page to Sellers' Joinder Agreement.  *Id*. at 11,

---

[3] Dr. Peace denies that Dr. Seemann, Dr. Hugate, and Dr. Knight are the only
individuals who received overhead reductions.  Docket No. 58 at 8, ¶ 50.  In Dr. Peace's
denial, Dr. Peace states that he looked through "financial records" that noted that Dr.
Seemann received an overhead reduction by "making a request to the board."  *Id*.
Furthermore, Dr. Peace also states that his review of the "financial records" showed that
several other doctors received "overhead reductions or forgiveness."  *Id*.  However, Dr.
Peace did not include these facts in his statement of additional disputed facts in
violation of the Court's practice standards.  *See* Practice Standards (Civil cases), Chief
Judge Philip A. Brimmer, § III.F.3.b.v.  Therefore, the Court deems these facts admitted.

¶¶ 54–55, 57.  The Joinder Agreement stated that, by signing, each employee-

shareholder agreed that he or she was "becoming a party to the merger agreement" as

a "Seller."  *Id.*, ¶ 56.  Additionally, as part of the merger, employee-shareholders,

including Dr. Peace, signed a Letter of Transmittal.[4]  *Id.*, ¶¶ 58–59.  The Letter of

Transmittal states[5]:

> By executing and delivering this Letter of Transmittal, the undersigned hereby
> acknowledges that he or she hereby approves of the Merger Agreement and the
> transactions contemplated thereby and is becoming a party to the Merger
> Agreement as a 'Seller' for all purposes thereunder.  Further, the undersigned
> hereby acknowledges and agrees to the terms and conditions set forth in the
> Merger Agreement.

*Id.*, ¶ 60.  As a "Seller" under the Merger Agreement, *id.* at 12, ¶ 62, Dr. Peace agreed

to Section 7.9(a)-(c) of the Merger Agreement, that states[6]:

> (a) Effective as of the Closing, each Seller on such Seller's own behalf and on
> behalf of such Seller's past, present and future Affiliates, agents, attorneys,
> administrators, heirs, executors, Related Parties, trustees, beneficiaries,
> representatives, successors and assigns claiming by or through such Seller
> (collectively, the "Related Persons"), hereby absolutely, unconditionally and
> irrevocably RELEASES and FOREVER DISCHARGES each . . . "Released
> Party" and collectively, the "Released Parties" from the following (collectively, the

---

[4] Through the Letter of Transmittal, the shareholder-employees agreed that their
"POSC Interests," which appear to be each shareholder's equity interests in the
acquired entities, will be converted to a right to receive the cash value of the interest.
*See* Docket No. 52-8.

[5] Dr. Peace admits that Panorama accurately cites the language of the Letter of
Transmittal, stating that the cited language "speaks for itself."  Docket No. 58 at 9, ¶ 60.
The remainder of Dr. Peace's denial is not responsive to whether the cited language is
accurate.  To the extent that Dr. Peace seeks to introduce additional statements of
disputed facts, such statements must be included in a separate section, rather than as a
part of his denials.  *See* Practice Standards (Civil cases), Chief Judge Philip A.
Brimmer, § III.F.3.b.v.  Therefore, the Court deems this fact admitted.

[6] Dr. Peace admits that Panorama accurately cites the language of the Merger
Agreement, stating that cited language "speaks for itself," but denies that "such
language serves as a valid USERRA waiver."  Docket No. 58 at 9–10, ¶ 63.  His
objection constitutes an improper legal argument in the facts section.  *See* Practice
Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  Therefore, the
Court deems this fact admitted.

"Releasing Party Claims"): all claims . . . actions, causes of action, suits, arbitrations, proceedings, debts, liabilities, obligations, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, fees, expenses, judgments, executions, indemnification rights, claims and demands arising out, relating to, against or in any way connected with a Released Party[.]

(b) Effective as of the Closing, each Seller hereby expressly waives any rights such Seller may have under applicable Laws to preserve Releasing Party Claims which such Seller does not know or suspect to exist in such Seller's favor at the time of executing the release provided in Section 7.9(a). Each Seller understands and acknowledges that such Seller may discover facts different from, or in addition to, those which such Seller knows or believes to be true with respect to the claims released herein, and agrees that the release provided in Section 7.9(a) shall be and remain effective in all respects notwithstanding any subsequent discovery of different or additional facts. If a Seller discovers that any fact relied upon in entering into the release provided in Section 7.9(a) was untrue, or that any fact was concealed, or that an understanding of the facts or law was incorrect, such Seller shall not be entitled to any relief as a result thereof, and such Seller surrenders any rights such Seller might have to rescind the release provided in Section 7.9(a) on any ground.

(c) Effective as of the Closing, each Seller hereby irrevocably covenants to refrain from . . . asserting any claim or demand, or commencing, instituting or causing to be commenced, any suit, proceeding or manner of action of any kind against any Released Party based upon any releasing Party Claim . . .

*Id*. at 12–13, ¶ 63. The Letter of Transmittal also states that the "undersigned hereby appoints Mark J. Conklin, M.D. as Sellers' Representative." Docket No. 52-8 at 8. In doing so, Dr. Peace agreed

to be bound by all decisions and actions taken by the Sellers' Representative in accordance with the Merger Agreement and this Letter of Transmittal. In furtherance of the foregoing, the undersigned agrees that all decisions, actions, consents and instructions by the Sellers' Representative shall be binding upon the undersigned, and the undersigned shall not have the right to object to, dissent from, protest or otherwise contest the same.

*Id*. at 7; *see also* Docket No. 52-15 at 2 ("By executing this Sellers' Joinder Agreement . . . the undersigned . . . agrees that he or she is becoming a party to . . . the Merger Agreement as a 'Seller.'"). The Letter of Transmittal also stated by signing Dr. Peace affirmed that he "had an opportunity review with [his] own legal and tax advisors the

6

legal and tax consequences to [Dr. Peace] of the transaction contemplated by this Letter of Transmittal and Merger Agreement."  Docket No. 52-8 at 7.  Dr. Conklin signed the Merger Agreement as the Sellers' Representative.[7]  Docket No. 58-4 at 5.  Upon Panorama's merger with UMP and Dr. Peace's agreement to the Merger Agreement, Dr. Peace received over $3 million and the opportunity to earn equity worth up to $1,875,000.[8]  *Id.* at 13, ¶ 65.

## II.   LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

---

[7] Neither party includes in its undisputed facts the full language of the Merger Agreement or Letter of Transmittal.  However, the Court finds that parties do not dispute the accuracy of the Merger Agreement or Letter of Transmittal as both parties refer to the documents throughout their briefing.

[8] Dr. Peace admits that he signed the Letter of Transmittal to "receive due compensation upon close of the Merger Agreement, including the amount referenced [by defendant]."  Docket No. 58 at 11.  However, Dr. Peace denies that he waived his rights under USERRA.  This is non-responsive to defendant's statement of fact and constitutes an improper legal argument in the facts section.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  Thus, the Court deems this fact admitted.

"Where . . .  a defendant moves for summary judgment to test an affirmative defense, the defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.  Once the defendant makes this initial showing, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff cannot meet this burden, the affirmative defense bars [his] claim, and the defendant is then entitled to summary judgment as a matter of law."  *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011) (alterations, internal quotations, and citations omitted).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To defeat a motion for summary judgment, the nonmovant's evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise," and "[u]nsubstantiated allegations carry no probative weight."  *SEC v. GenAudio Inc.*, 32 F.4th 902, 921 (10th Cir. 2022) (citations and alterations omitted).  When reviewing a motion for summary judgment, a

court must view the evidence in the light most favorable to the non-moving party.

*Bausman*, 252 F.3d at 1115.

## III.    ANALYSIS

Under 38 U.S.C. § 4311, known as the "anti-discrimination" provision, "USERRA

affords broad protections to service members against employment discrimination,

providing that members 'shall not be denied initial employment, reemployment, retention

in employment, promotion, or any benefit of employment by an employer on the basis of

that membership.'"  *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009)

(quoting 38 U.S.C. § 4311(a)).  To prevail on a USERRA claim, plaintiff must show that

his or her employer denied plaintiff a "benefit of employment."  *Melendez-Garcia v.*

*Sanchez*, 629 F.3d 25, 39–40 (1st Cir. 2010).  A "benefit of employment" under

USERRA is defined as follows:

> [T]he terms, conditions, or privileges of employment, including any advantage,
> profit, privilege, gain, status, account, or interest (including wages or salary for
> work performed) that accrues by reason of an employment contract or agreement
> or an employer policy, plan, or practice and includes rights and benefits under a
> pension plan, a health plan, an employee stock ownership plan, insurance
> coverage and awards, bonuses, severance pay, supplemental unemployment
> benefits, vacations, and the opportunity to select work hours or location of
> employment.

38 U.S.C. § 4303(2).

To bring a USERRA claim under 38 U.S.C. § 4311, the plaintiff must also make

out a prima facie case that his status as a servicemember was a "motivating factor" in

the employer's decision to deny the servicemember a benefit of employment.  *Greer v.*

*City of Wichita*, *Kan.*, 943 F.3d 1320, 1323 (10th Cir. 2019) (quoting 38 U.S.C.

§ 4311(c)(1)).  Once an employee meets his burden, the employer has the burden to

show that it "would have taken the same action even if the employee had not been in

the military."  *Id*. (citations omitted).

A plaintiff may also bring a USERRA claim under 38 U.S.C. § 4316, which

"establishes the rights of service members who are absent from employment while

fulfilling their service obligations."  *Crews*, 567 F.3d at 864.  Section 4316 provides that

> a person who is absent from a position of employment by reason of service in the uniformed services shall be–
>
> > (A) deemed to be on furlough or leave of absence while performing such service; and
> >
> > (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1).  As discussed previously, under 38 U.S.C. § 4311, a plaintiff

must show that he is entitled to a "benefit of employment."  38 U.S.C. § 4311(a).

Similarly, under 38 U.S.C. § 4316, a plaintiff must show that, while on military leave, he

was entitled to "rights and benefits" that are "generally provided by the employer of the

person to employees having similar seniority, status, and pay who are on furlough of

leave of absence."  38 U.S.C. § 4316(b)(1)(B).  "Benefit of employment" and "rights and

benefits" share the same definition under USERRA:

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).  A servicemember is only entitled to "the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services."  20 C.F.R. § 1002.150(b).  Therefore, a servicemember who seeks relief under 38 U.S.C. § 4316 must show that his military leave is comparable to another form of leave for which he seeks the same treatment.  *Id*.

A. **Whether Dr. Peace Waived USERRA Claims that Arose Before July 18, 2022**

Panorama argues that it is entitled to summary because Dr. Peace "waived any right to seek relief under USERRA that occurred before the July 18, 2022 Closing date of the UMP-Panorama merger" by signing the Letter of Transmittal, pursuant to Section 7.9 of the Merger Agreement.  Docket No. 52 at 21–24.  The Letter of Transmittal states:

> By executing and delivering this Letter of Transmittal, the undersigned hereby acknowledges that he or she hereby approves of the Merger Agreement and the transactions contemplated thereby and is becoming a party to the Merger Agreement as a 'Seller' for all purposes thereunder.  Further, the undersigned hereby acknowledges and agrees to the terms and conditions set forth in the Merger Agreement.

*Id*.at 11, ¶ 60.  In turn, Section 7.9 of the Merger Agreements states:

> (a) Effective as of the Closing, each Seller on such Seller's own behalf and on behalf of such Seller's past, present and future Affiliates, agents, attorneys, administrators, heirs, executors, Related Parties, trustees, beneficiaries, representatives, successors and assigns claiming by or through such Seller (collectively, the "Related Persons"), hereby absolutely, unconditionally and irrevocably RELEASES and FOREVER DISCHARGES each . . . "Released Party" and collectively, the "Released Parties" from the following (collectively, the "Releasing Party Claims"): all claims . . . actions, causes of action, suits, arbitrations, proceedings, debts, liabilities, obligations, sums of money, accounts, covenants, contracts, controversies, agreements, promises, damages, fees, expenses, judgments, executions, indemnification rights, claims and demands arising out, relating to, against or in any way connected with a Released Party[.]

(b) Effective as of the Closing, each Seller hereby expressly waives any rights such Seller may have under applicable Laws to preserve Releasing Party Claims which such Seller does not know or suspect to exist in such Seller's favor at the time of executing the release provided in Section 7.9(a).  Each Seller understands and acknowledges that such Seller may discover facts different from, or in addition to, those which such Seller knows or believes to be true with respect to the claims released herein, and agrees that the release provided in Section 7.9(a) shall be and remain effective in all respects notwithstanding any subsequent discovery of different or additional facts.  If a Seller discovers that any fact relied upon in entering into the release provided in Section 7.9(a) was untrue, or that any fact was concealed, or that an understanding of the facts or law was incorrect, such Seller shall not be entitled to any relief as a result thereof, and such Seller surrenders any rights such Seller might have to rescind the release provided in Section 7.9(a) on any ground.

(c) Effective as of the Closing, each Seller hereby irrevocably covenants to refrain from . . . asserting any claim or demand, or commencing, instituting or causing to be commenced, any suit, proceeding or manner of action of any kind against any Released Party based upon any releasing Party Claim . . . .

*Id*. at 12–13, ¶ 63.  Panorama argues that Section 7.9 of the Merger Agreement is "sufficiently clear and unambiguous to waive Dr. Peace's USERRA claim." *Id*. at 24. Moreover, Panorama argues that the benefit that Dr. Peace received in exchange for agreeing to Section 7.9 of the Merger Agreement was more beneficial than the rights Dr. Peace waived. *Id*. at 22–23.

One of the purposes of USERRA is "to prohibit discrimination against persons because of their service in the uniformed services." *Lewis v. Rite of Passage, Inc*., 217 F. App'x 785, 786 (10th Cir. 2007) (unpublished) (quoting 38 U.S.C. § 4301(a)(3)). Section 4302(b) provides that USERRA

supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302(b).  However, the application of section 4302(b) is limited by section

4302(a), which provides that

> [n]othing in this chapter shall supersede, nullify or diminish any Federal or State
> law (including any local law or ordinance), contract, agreement, policy, plan,
> practice, or other matter that establishes a right or benefit that is more beneficial
> to, or is in addition to, a right or benefit provided for such person in this chapter.

38 U.S.C. § 4302(a); *see also Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1107

(6th Cir. 2010).  Courts have "recognized that the text and legislative history of

USERRA indicate that a veteran may waive his rights under the statute."  *Tolle v.*

*PocketSonics, Inc.*, 342 F. Supp. 3d 695, 701 (W.D. Va. 2018) (citing *Wysocki*, 607 F.3d

at 1108).  The "critical inquiry" is whether the rights or benefits that the waiver provides

are "more beneficial" than the rights or benefits the servicemember agreed to give up.

*Id*. at 702; *see also Wysocki*, 607 F.3d at 1107; *Ziegler v. Dep't of the Interior*, 2022 WL

1435385, at *4 (Fed. Cir. May 6, 2022); *Ward v. Shelby Cnty., Tenn.*, 98 F.4th 688, 692

(6th Cir. 2024).  To be enforceable, a waiver must also be "clear and unambiguous."

*Wysocki*, 607 F.3d at 1108; *Tolle*, 342 F. Supp. 3d at 701; *Ziegler*, 2022 WL 1435385,

at *4.

Dr. Peace provides four reasons as to why he did not waive his rights under

USERRA by signing the Letter of Transmittal.  First, Dr. Peace argues that, although he

signed the Letter of Transmittal, his "signature did not grant the Sellers' Representative

the authority to contract away Dr. Peace's USERRA rights."  Docket No. 58 at 22.  It is

undisputed that Dr. Peace signed the Signature Page to the Joinder Agreement and the

Letter of Transmittal on June 27, 2022.  Docket No. 52 at 11, ¶¶ 57, 59.  The Letter of

Transmittal states

> By executing and delivering this Letter of Transmittal, the undersigned hereby acknowledges that he or she hereby approves of the Merger Agreement and the transactions contemplated thereby and is becoming a party to the Merger Agreement as a 'Seller' for all purposes thereunder.  Further, the undersigned *hereby acknowledges and agrees to the terms and conditions set forth in the Merger Agreement*[.]

*Id*., ¶ 60 (emphasis added).  Moreover, the Letter of Transmittal states that the "undersigned hereby appoints Mark J. Conklin, M.D. as Sellers' Representative." Docket No. 52-8 at 8.  In doing so, Dr. Peace agreed

> to be bound by all decisions and actions taken by the Sellers' Representative in accordance with the Merger Agreement and this Letter of Transmittal.  In furtherance of the foregoing, the undersigned agrees that all decisions, actions, consents and instructions by the Sellers' Representative shall be binding upon the undersigned, and the undersigned shall not have the right to object to, dissent from, protest or otherwise contest the same.

*Id*.; *see also* Docket No. 52-15 at 2 ("By executing this Sellers' Joinder Agreement . . . the undersigned . . . agrees that he or she is becoming a party to . . . the Merger Agreement as a 'Seller.'").  Dr. Conklin signed the Merger Agreement as the Sellers' Representative.  Docket No. 58-4 at 5.  Dr. Peace's argument that he did not sign the Merger agreement is immaterial.  What is material is that Dr. Peace signed the Letter of Transmittal, agreeing to be bound by the terms of the Merger Agreement, and appointing Dr. Conklin to act as his agent in executing the agreement.  As a result, the Court finds that Dr. Peace is bound by the terms and conditions of the Merger Agreement, including the release in Section 7.9.

Second, Dr. Peace argues that Section 7.9 is not a "clear and unambiguous retraction of the service-member's rights" because it is an unconditional catch-all release.  Docket No. 58 at 23.  The Court finds that the language in Section 7.9 of the Merger Agreement is sufficiently clear and unambiguous to waive Dr. Peace's USERRA

rights.  Dr. Peace agreed to "absolutely, unconditionally and irrevocably RELEASE[] and FOREVER DISCHARGE[]" Panorama from "all claims . . ., actions, causes of action, suits . . . arising out, relating to, against or in any way connected with" Panorama prior to the closing date.  Docket No. 52 at 12, ¶63.  Dr. Peace also agreed to waive his rights to any claims "which such Seller does not know or suspect to exist in such Seller's favor at the time of executing the release."  *Id*.  Many courts have upheld similar broad releases even though they do not specifically reference USERRA or military status.  *See, e.g.*, *Ziegler*, 2022 WL 1435385, at *4 (finding that the waiver language was "clear and unambiguous" where servicemember agreed to release the agency from "any and all appeals, complaints, claims . . . up to and including the effective date of this Settlement Agreement"); *Tolle v. PocketSonics, Inc.*, 2018 WL 1161142, at *3 (W.D. Va. Mar. 5, 2018*)* (holding that the severance agreement "used clear and unambiguous language to waive the plaintiff's USERRA rights" because it expressly stated that plaintiff waives "any and all" claims in connection with his employment); *Cornelius v. United Parcel Serv., Inc.*, 2012 WL 975053, at *1 (S.D.N.Y. Mar. 21, 2012) (finding that the release clearly waived plaintiff's USERRA claims because plaintiff agreed to "unconditionally release [defendant] from all known or unknown claims"); *Ward*, 98 F.4th at 691-92 (holding that the release provision "patently encompassed" plaintiff's USERRA claim because the provision stated that plaintiff agreed to release "any and all claims whatsoever").

Third, Dr. Peace argues that "there is no evidence that Dr. Peace believed that the benefits he received in signing the Letter of Transmittal . . . were more beneficial than those he purportedly gave up under USERRA."  Docket No. 58 at 23.  "[A]

veteran's subjective understanding or motivation is one of several factors that may bear on the determination of whether a release agreement resulted in a situation more beneficial to a veteran than his USERRA rights." *Tolle*, 342 F. Supp. 3d at 704.  The absence of "mistake, incapacity, fraud, misrepresentation, unconscionability, or duress" can evince that the servicemember did sign a release believing that the benefits in doing so would exceed his claims under USERRA. *Ward*, 98 F.4th at 693 (citing *Wysocki*, 607 F.3d at 1108).  In addition to the servicemember's subjective understanding of a release agreement, "the particular terms of the agreement, the extent to which the veteran was involved in negotiating the agreement, whether the veteran obtained the advice of counsel, and a comparison of how the employer treated similarly-situated non-veteran employees" are relevant factors. *Tolle*, 342 F. Supp. 3d 704.

In *Wysocki*, the court affirmed the district court's grant of summary judgment in favor of the employer where the district court found that the servicemember "voluntarily and knowingly released any claims" against the employer.  607 F.3d at 1103.  The court considered the "clear and unambiguous language" that informed the servicemember that he was waiving his USERRA rights, the fact that the servicemember received over $6,000 in signing the release, and the absence of mistake, incapacity, fraud, misrepresentation, unconscionability, or duress in the course of the servicemember signing the release. *Id*. at 1108.  The court also noted that the servicemember "was encouraged to see a lawyer and had ample time to consider the Release before he signed it." *Id*.

By contrast, in *Ward*, the court considered whether the servicemember was aware of his USERAA claim and whether he was represented by counsel. 98 F.4th at 693. The court also considered – and ultimately vacated the district court's grant of summary judgment based on – the servicemember's testimony that the agreement was presented on a "take it or leave it" basis and he had been unemployed for eighteen months at the time of signing. *Id*. Thus, the court held that "a reasonable jury could find that [the servicemember's] decision to enter into the agreement reflected a considered decision on his part, or instead that it reflected only desperation." *Id*.

Based on the undisputed facts, no reasonable jury could conclude that the release did not provide a benefit that exceeded Dr. Peace's USERRA claim. Dr. Peace received just over $3 million and the opportunity to earn equity worth up to $1,875,000 in return for agreeing to the Merger Agreement. Docket No. 52 at 13, ¶ 65. By signing the Letter of Transmittal, Dr. Peace also affirmed that he "had an opportunity to review with [his] own legal and tax advisors the legal and tax consequences to [Dr. Peace] of the transaction contemplated by this Letter of Transmittal and Merger Agreement." Docket No. 52-8 at 7; see *Wysocki*, 607 F.3d at 1107 (considering the fact that the servicemember was encouraged to see a lawyer and had ample time before deciding to sign the release in holding that the release waiver was valid). Moreover, the undisputed facts show that Dr. Peace was subjectively aware that signing the release was more beneficial than his USERRA claim. Dr. Peace was aware of the value of his USERRA claims at the time of signing the Letter of Transmittal on June 27, 2022 because he first raised the issue with his overhead obligations while on military leave in June 2021. Docket No. 52 at 9, 11, ¶¶ 46, 59. Furthermore, neither party raises the argument

17

"mistake, incapacity, fraud, misrepresentation, unconscionability, or duress" occurred in the course of Dr. Peace signing the release, such that this argument is waived. *See Wysocki*, 607 F.3d at 1108. Unlike in *Ward*, there are no facts that support the argument that the Merger Agreement was akin to an "adhesion contract." *See* 98 F.4th at 693.

Fourth, Dr. Peace argues that USERRA should be "construed liberally," especially in light of there being no "language indicating that the Release was an express waiver of USERRA." Docket No. 58 at 24. As discussed previously, the language of the Letter of Transmittal and Merger Agreement constitutes a clear and unambiguous waiver of Dr. Peace's claims under USERRA.

Accordingly, the Court will grant summary judgment for Panorama on its affirmative defense of waiver and dismiss Mr. Peace's claims that arose prior to July 18, 2022.

## B. **Panorama's Breach of Contract Counterclaim**

Panorama argues that Dr. Peace breached Section 7.9 of the Merger Agreement by bringing claims that arose prior to July 18, 2022. Docket No. 52 at 24. Section 7.9 of the Merger Agreement states that

> (c) Effective as of the Closing, each Seller hereby irrevocably covenants to refrain from . . . asserting any claim or demand, or commencing, instituting or causing to be commenced, any suit, proceeding or manner of action of any kind against any Released Party based upon any releasing Party Claim.

Docket No. 52-14 at 3. Dr. Peace argues that summary judgment should be denied on Panorama's breach of contract counterclaim because a "genuine dispute exists" as to whether Dr. Peace waived his USERRA claims that arose prior to July 18, 2022. Docket No. 58 at 24. Generally speaking, the elements of a breach of contract claim

under Colorado law[9] are: (1) the existence of a contract; (2) performance by the

claimant or some justification for nonperformance; (3) failure to perform the contract by

the defendant; and (4) resulting damages to the claimant.  *W. Distrib. Co. v. Diodosio*,

841 P.2d 1053, 1058 (Colo. 1992).  When the terms of a contract are unambiguous, its

construction is a matter of law and summary judgment is appropriate.  See *Harrison W.*

*Corp. v. Gulf Oil Co.*, 662 F.2d 690, 695 (10th Cir. 1981) (analyzing the terms of a

contract under New Mexico law).  Dr. Peace only disputes the first element, arguing that

"the Release is not, and cannot be, a waiver of Dr. Peace's USERRA protections, and a

genuine dispute exists regarding its validity."  Docket No. 58 at 24.

---

[9] Neither party addresses what state's law applies to Panorama's breach of
contract claim.  Docket No. 52 at 24; Docket No.58 at 24.  Federal courts apply the
choice-of-law rules of the forum state in which it sits.  *See Mem'l Hosp. of Laramie Cnty
v. Healthcare Realty Tr. Inc.*, 509 F.3d 1225, 1229 (10th Cir.2007).  Colorado has
adopted the choice-of-law approach of the Restatement (Second) of Conflict of Laws
(the "Restatement"), which requires a court to apply the substantive law of the state
having the "most significant relationship" to the issue.  *Barnett v. Surefire Med., Inc.*,
342 F. Supp. 3d 1167, 1173 (D. Colo. 2018) (citing *Chemiti v. Kaja*, No. 13-cv-00360-
LTB-KMT, 2015 WL 585594, at *2 (D. Colo. Feb. 11, 2015); *Wood Bros. Homes, Inc. v.
Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (noting that "the
objective of the Restatement (Second) is to locate the state having the 'most significant
relationship' to the particular issue")).  In determining which state has the most
significant relationship to a contract claim, the Court is guided by the factors set forth in
§ 188 of the Restatement.  *Nicholls v. Zurich Am. Ins. Grp.*, 244 F. Supp. 2d 1144, 1152
(D. Colo. 2003).  Section 188 lists five contacts to be taken into account, including:

> [a] the place of contracting; [b] the place of negotiation; [c] the place of
> performance; [d] the location of subject matter of the contract; and [e] the
> domicile, residence, or place of business of the parties.

*Id*. (citing Restatement § 188).

Because Panorama is a Colorado corporation, Dr. Peace is a resident of Colorado and
works for Panorama in Colorado, Docket No. 1 at 2, ¶¶ 6–9, and the parties have
provided no evidence that the law of another state applies, the Court will apply Colorado
contract law.

As discussed previously, the Court finds that it is undisputed that Dr. Peace waived his USERRA claims by signing the Letter of Transmittal.  A valid contract existed between Dr. Peace and Panorama as memorialized in the Merger Agreement.  Dr. Peace breached Section 7.9 of the Merger Agreement by bringing claims in this case that arose prior to Panorama's merger.  Furthermore, there is no dispute that Panorama did not perform under the Merger Agreement, that Dr. Peace breached the contract by bringing suit, and that Panorama suffered damages in defense of the suit.  Accordingly, the Court will grant summary judgment on Panorama's breach of contract counterclaim, with the issue of the amount of damages to be decided by the jury.

### C.  Dr. Peace's USERRA Claim

The Court must first determine whether 38 U.S.C. §§ 4311 and 4316 govern Dr. Peace's claims that arose after the merger.  Dr. Peace alleges that Panorama's actions following the merger constitute "discrimination" pursuant to 38 U.S.C. § 4311.  Docket No. 1 at 7, ¶ 45.  The basis for Dr. Peace's claim of "discrimination" is that Panorama "charged Dr. Peace substantial sums of overhead while he was away from the practice fulfilling his military obligations, unlike other similarly situated employees who have taken leave from the practice."  *Id*., ¶ 42.  Furthermore, Dr. Peace alleges that, unlike when he is on military leave, "other shareholder physician employees of Defendants are not charged overhead during their periods of leave, such as bereavement leave, medical leave, sabbaticals, etc."  *Id*., ¶ 44.  Dr. Peace brings his claim under USERAA, "38 U.S.C. § 4311, et seq."  *Id*. at 7.

Although Dr. Peace does not explicitly identify 38 U.S.C. § 4316 as the basis for his claims, he nonetheless makes factual allegations that he did not receive the same

benefits (i.e., exemptions from overhead assessments) while on military leave as employees who were on other types of leave, which is within the purview of 38 U.S.C. § 4316. *Id.*, ¶¶ 42–44. Even where a plaintiff does not "explicitly list" USERAA provisions as being the basis for the plaintiff's claims, courts have considered such claims to have been made pursuant to USERRA where the factual allegations implicate such provisions. *See, e.g.*, *Smith v. Vill. of Downers Grove*, 2020 WL 1491177, at *6 (N.D. Ill. Mar. 26, 2020); *Rogers v. City of San Antonio*, 392 F.3d 758, 760, 771; *Crews*, 567 F.3d at 865–66. Both parties address Dr. Peace's USERRA claim under 38 U.S.C. § 4316 in their briefing. Docket No. 52 at 16–19; Docket No. 58 at 18–19. The Court will consider whether Dr. Peace has a legal basis for his USERRA claim under either § 4311 or § 4316. *See Crews*, 567 F.3d at 865 ("it would be premature to conclude that only § 4316(b)(1) governs this case").

Under 38 U.S.C. § 4311, an employer may not deny "any benefit of employment" to a servicemember on the basis of his military status. 38 U.S.C. § 4311(a). Under 38 U.S.C. § 4316, a servicemember is entitled to "such other rights and benefits . . . as are generally provided by the employer of the person to employees . . . who are on furlough or leave of absence." 38 U.S.C. § 4316(b)(1)(B). "Benefit of employment" and "rights and benefits" share the same definition under 38 U.S.C. § 4303:

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2). As Dr. Peace concedes, "USERRA applies to the employee-employer relationship, but not the relationship among business owners or partners in a partnership." Docket No. 58 at 15. Therefore, to grant summary judgment for Panorama under either 38 U.S.C. §§ 4311 or 4316, the Court must find that it is undisputed that Dr. Peace is a partner and, as a result, is not covered under USERRA.

Panorama argues that a "benefit" under USERRA is one that is available to all employees, but that overhead reductions only apply to employee-shareholders. Docket No. 52 at 14–15. Panorama also argues that it is entitled to summary judgment because Dr. Peace's request for overhead reductions – which Dr. Peace identifies as the "benefit of employment" that Panorama is denying based on his military service – is a "function of his status as an employer-shareholder, not an employee." *Id*. at 14. Panorama states that Dr. Peace's obligation to pay overhead is not a condition of employment, but stems from the fact that, in addition to being an employee of Panorama, he is a shareholder of the business. *Id.* at 14–16.

Dr. Peace argues that he is an employee for purposes of USERRA based on the factors that the U.S. Supreme Court relied upon in *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003).[10] *Id.* In *Clackamas*, the Court held that whether a director-shareholder physician was an employee of the defendant clinic, for purposes of imposing liability under the Americans with Disabilities Act (the "ADA"),

---

[10] Courts have applied the *Clackamas* factors or ones similar to them in a variety of statutory contexts. *See, e.g., De Jesus v. LTT Card Servs., Inc.*, 474 F.3d 16, 24 (1st Cir. 2007) (applying *Clackamas* factors to Title VII and the ADA); *Simpson v. Ernst & Young*, 100 F.3d 436, 443–44 (6th Cir. 1996) (applying factors similar to the *Clackamas* factors to the Age Discrimination in Employment Act and the Employee Retirement Income Security Act).

depended on the following factors: (1) "Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;" (2) "Whether and, if so, to what extent the organization supervises the individual's work;" (3) "Whether the individual reports to someone higher in the organization;" (4) "Whether and, if so, to what extent the individual is able to influence the organization;" (5) "Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;" and (6) "Whether the individual shares in the profits, losses, and liabilities of the organization." *Clackamas*, 538 U.S. at 449–50. Under the *Clackamas* factors, Dr. Peace argues that he is an "employee for the purposes of USERRA because he is entirely subject to the organization's control." Docket No. 58 at 16.

Panorama cites *Thomsen v. Dep't of Treasury*, 169 F.3d 1378, 1381 (Fed. Cir. 1999), for the proposition that overhead reductions are not a benefit for purposes of USERRA because it is not a benefit extended to all employees, only shareholders. Docket No. 52 at 14. *Thomsen*, however, is distinguishable. In *Thomsen*, the plaintiff was an officer in the Uniformed Division in the United States Secret Service and also a member of the Army "Ready Reserves." 169 F.3d at 1380. The Secret Service considers all officers in the Uniformed Division to be "key" civilian positions that cannot be vacated during a national emergency or mobilization without severely impairing the functions of the agency. *Id*. As a result, the Secret Service prohibited officers in the Uniformed Division from membership in the Ready Reserves. *Id.* As a result, the Secretary of the Army transferred the plaintiff to inactive status in the Reserves. *Id*. The plaintiff brought suit under USERRA, arguing that the Secret Service denied him a "benefit of employment" by prohibiting his membership in the Army Reserves. *Id*.

However, the court held that "USERRA cannot properly be read to convey an affirmative right to serve in the armed forces." *Id.* at 1381. Here, Dr. Peace does not argue that he is entitled to an affirmative right to serve in the military as a benefit of employment. Rather, Dr. Peace argues that Panorama's failure to provide overhead exemptions is the benefit of employment that he was denied. Docket No. 58 at 14. Moreover, Dr. Peace, unlike the plaintiff in *Thomsen*, alleges that the benefit of employment he seeks is one that was extended to nonmilitary personnel. *Id.* at 18.

Panorama fails to present undisputed facts addressing the *Clackamas* factors that establish Dr. Peace was a partner, rather than an employee, of Panorama for purposes of USERRA. Panorama refers to Dr. Peace as an "employee-shareholder" who was bound by the Compensation Plan and had the opportunity to "invest in and earn income from Panorama's related entities, and voting rights." Docket No. 52 at 6–7, ¶¶ 29–37. However, the "mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee or a proprietor." *Clackamas,* 538 U.S. at 450. Moreover, while Panorama addresses some of the *Clackamas* factors, it does not provide undisputed evidence that would allow the Court to engage in the necessary inquiry into the six factors and conclude on summary judgment that Dr. Peace was not an employee. *De Jesus v. LTT Card Servs., Inc.,* 474 F.3d 16, 24 (1st Cir. 2007) (vacating the district court's grant of summary judgment because the "defendants failed to offer evidence pertaining to the six factors described in *Clackamas*") (citing *Claudio–Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 101–02, 104 (1st Cir. 2004)); *Madigan v. Webber Hosp. Assoc.*, 2012 WL 4510958, at *17 (D. Me. Sept. 28, 2012). Therefore, the Court

finds that there are genuine issues of material fact as to whether Dr. Peace is an

employee, despite also being a shareholder, that preclude summary judgment.[11]

Accordingly, the Court will deny summary judgment to Panorama on Dr. Peace's

USERRA claim under 38 U.S.C. §§ 4311 and 4316 regarding the time period after July

18, 2022.

## IV.    CONCLUSION

Therefore, it is

---

[11] Panorama argues that "USERRA does not require that servicemembers
receive special treatment."  Docket No. 52 at 21.  Panorama claims that, because there
is "no evidence that similarly situated employee-shareholders were treated better than
he, or any other evidence to support Dr. Peace's discrimination claim," it is entitled to
summary judgment on Dr. Peace's claim under 38 U.S.C. § 4311. *Id.*  However, this
argument assumes that the comparators that Dr. Peace relies upon – shareholders
receiving overhead exemptions as a result of Panorama's disability and bereavement
policy – are not proper comparators, apparently because Dr. Peace's overhead
exemption was better. *Id.* at 16.  However, the issue of whether Dr. Peace's
comparators are proper comparators raises fact issues that must be resolved by the
jury. *See De Jesus*, 474 F.3d at 24; *Madigan*, 2012 WL 4510958, at *17.
Panorama also argues that Dr. Peace cannot show that his "military service was
a motivating factor in the decision not to reduce his overhead expenses."  Docket
No. 52 at 19.  As Panorama notes, one of the factors in determining whether military
status was a "motivating factor" is the "disparate treatment of certain employees
compared to other employees with similar work records or offense." *Id.* at 20 (citing
*Lewis v. Rite of Passage, Inc.*, No. 04-cv-01683-EWN-PAC, 2006 WL 650192, at *6 (D.
Colo. Mar. 10, 2006)).  Under the disparate treatment analysis, summary judgment for
the employer is warranted where no reasonable jury could "infer a discriminatory
motive" because the plaintiff "has not established that he was similarly situated to the
employees who allegedly received better treatment than he." *Id.* at *7.  Once again, the
issue of whether Dr. Peace's comparators are proper comparators (i.e., they are
"similarly situated") raises fact issues that must be resolved by the jury.

ORDERED that defendant and counter claimant Panorama Orthopedics and

Spine Center, Inc., d/b/a Panorama Orthopedics & Spine Center, P.C.'s Motion for

Summary Judgment [Docket No. 52] is **GRANTED in part** and **DENIED in part.**

DATED January 6, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge