IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 23-cv-01027-PAB-TPO

WILLIAM J. PEACE, an individual,

Plaintiff and Counter Defendant,

v.

PANORAMA ORTHOPEDICS AND SPINE CENTER, INC., d/b/a PANORAMA ORTHOPEDICS & SPINE CENTER, P.C.,

Defendant and Counter Claimant.

---

**ORDER**

---

This matter comes before the Court on the Motion for Partial Summary Judgment of defendant and counter claimant Panorama Orthopedics and Spine Center, Inc., d/b/a Panorama Orthopedics & Spine Center, P.C. ("Panorama") [Docket No. 109]. Plaintiff and counter defendant Dr. William J. Peace filed a response. Docket No. 110. Panorama filed a reply. Docket No. 113. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. PROCEDURAL BACKGROUND

On January 6, 2025, the Court issued its summary judgment order regarding Dr. Peace's claim for discrimination under the Uniform Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4311-4355. *See* Docket No. 83 at 1-2. In the January 6, 2025 order, the Court also ruled on Panorama's affirmative defense that Dr. Peace waived any claims under USERRA that arose before July 18, 2022 and Panorama's breach of contract counterclaim. *Id.* The Court granted

summary judgment for Panorama on its affirmative defense, finding that Dr. Peace had waived his USERRA claims that arose before July 18, 2022, and entered summary judgment for Panorama on its breach of contract counterclaim. *Id.* at 11-20. The Court denied summary judgment on Dr. Peace's USERRA claim. *Id.* at 20-25.

On December 6, 2024, the parties filed a joint motion to vacate and continue the trial then set to begin on January 27, 2025. Docket No. 68 at 1. The parties informed the Court that Panorama terminated Dr. Peace's employment on December 2, 2024. *Id.* The parties moved to continue the trial because Dr. Peace intended to seek leave to amend his complaint to add new claims arising out of his termination. *Id.* at 1-2.

On January 10, 2025, the Court granted the parties' motion to continue and vacate the trial. *See* Docket No. 86. The Court referred Dr. Peace's motion for leave to amend his complaint to Magistrate Judge Timothy P. O'Hara. *See id.* On January 27, 2025, Judge O'Hara granted Dr. Peace's motion for leave to amend, and Dr. Peace filed his amended complaint. Docket Nos. 88 at 1-2, 89. In his amended complaint, Dr. Peace adds Counts II and III, alleging that Panorama's termination of his employment violated USERRA. *See* Docket No. 89 at 12-14.

## II. UNDISPUTED FACTS[1]

On July 22, 2011, Dr. Peace joined the Air National Guard (the "Guard"). Docket No. 109 at 2, ¶ 1. On October 1, 2021, Dr. Peace started working at Panorama and informed Panorama of his military obligations during his interview and onboarding. *Id.* at 3, ¶ 3. Panorama, among other services, provides orthopedic, sports medicine, spine

[1] The following facts are undisputed unless otherwise noted.

care, joint replacement, imaging, physical therapy and performance training services at various facilities throughout Colorado. *Id.*, ¶ 2.

On January 1, 2016, Dr. Peace became an employee-shareholder at Panorama. *Id.*, ¶ 5. When Dr. Peace became an employee-shareholder, he agreed to be bound by Panorama's Physician-Compensation Plan (the "Compensation Plan"). *Id.*, ¶ 6. The current Compensation Plan went into effect on July 18, 2022 and remains in effect today. *Id.*, ¶ 7. Employee-shareholder compensation at Panorama is governed by the Compensation Plan. *Id.*, ¶ 8. The Compensation Plan applies to all employee-shareholders and is not unique to Dr. Peace. *Id.*, ¶ 9. The Compensation Plan utilizes an equation to calculate employee-shareholders' income, which factors both revenue and expenses of the practice. *Id.*, ¶ 10.

As an employee-shareholder, Dr. Peace was required to contribute to overhead costs. *Id.*, ¶ 11. Dr. Peace received a reduction in his overhead obligations for a portion of his tenure as an employee-shareholder, which amounted to an 80% reduction in his overhead obligations for up to eight weeks of military leave per year. *Id.* at 4, ¶ 12.

Between 2021 and September 2024, Dr. Peace notified Panorama that, in his opinion, Panorama was violating USERRA by requiring Dr. Peace to pay overhead while he was on military leave. *Id.*, ¶ 14; Docket No. 110 at 8, ¶ 1. Dr. Peace requested that Panorama correct the purported violation of USERRA. Docket No. 109 at 4, ¶ 14. Dr. Peace notified Panorama of the alleged USERRA violation and asked Panorama to correct the violation at least five times. *Id.*, ¶ 15. Dr. Peace does not recall the last specific date that he requested that Panorama do so. *Id.*

On May 21, 2022, Dr. Mark Conklin encouraged Panorama physicians to apply for a role at CommonSpirit Health ("CommonSpirit"). Docket No. 110 at 9, ¶ 2. Dr. Conklin stated that the "ideal candidate would come from Panorama." *Id.* On May 27, 2022, Dr. Conklin reiterated Panorama's desire that a Panorama employee apply for the CommonSpirit position by requesting that all interested physicians "please push on the link and apply for the position." *Id.*, ¶ 3. In November 2022, Dr. Peace began working for CommonSpirit as Executive Medical Director of the Orthopedic Service Line for the Mountain Region. Docket No. 109 at 5, ¶ 18. This position required 20 hours per week and was a "0.5 full-time equivalent." *Id.* On November 9, 2022, the Panorama Board voted to require that Dr. Peace meet his full overhead obligations to remain a shareholder, despite his executive status at CommonSpirit. Docket No. 110 at 9, ¶ 6. On April 24, 2023, Dr. Peace filed this lawsuit alleging that Panorama violated USERRA. Docket No. 109 at 4, ¶ 16. After Dr. Peace filed the lawsuit, Dr. Amit Agarwala and Dr. Mitchell Seemann told him that the filing of the lawsuit was not necessary. *Id.*, ¶ 17.

As an employee-shareholder, Dr. Peace was bound by Panorama's Standards of Conduct. *Id.* at 7, ¶ 33. The Standards of Conduct include a non-exhaustive list of examples of behavior that would be "considered infractions . . . which would result in disciplinary action, up to and including termination." *Id.*, ¶ 34. One listed behavior was "[u]sing excessively . . . threatening . . . language" and "[u]sing intimidation tactics and making threats." *Id.*, ¶ 35.

On November 6, 2023, Panorama Chief Operations Officer Lori Bradshaw emailed Dr. Peace, notifying him that Panorama's Board had voted to discontinue

Panorama's evening/extended clinics. *Id.*, ¶ 36. The evening/extended clinics were Dr. Peace's primary means of offsetting the time lost to military service and CommonSpirit. Docket No. 110 at 9-10, ¶¶ 9-10. On November 7, 2023, Dr. Peace responded to Ms. Bradshaw, stating "I would suggest that you speak to your counsel before you make any changes to my schedule, as this is blatant retaliation." Docket No. 109 at 8, ¶ 37. Other Panorama employees worked evening/extended clinics. *Id.*, ¶ 38.

At Panorama, some employee-shareholders paid for a dedicated Physician's Assistant ("PA") or Surgical Assistant ("SA"). *Id.* at 8, ¶ 42. These employee-shareholders paid the PAs' or SAs' compensation directly, out-of-pocket, meaning that those PAs' or SAs' compensation did not come from Panorama's practice overhead. *Id.* Other employee-shareholders, like Dr. Peace, used non-dedicated PAs or SAs. *Id.* at 9, ¶ 43. These PAs and SAs were part of Panorama's practice overhead and payment of their wages was shared among all employee-shareholder physicians. *Id.* Dedicated PAs and SAs are typically allocated only to the employee-shareholders who are paying their compensation. *Id.*, ¶ 44. Non-dedicated PAs and SAs are shared among all employee-shareholders. *Id.*

During his employment and up until approximately November 15, 2023, Dr. Peace primarily worked with PA Kim Madden, a non-dedicated PA, on his day-to-day elective surgical practice. *Id.*, ¶ 45. On or around November 15, 2023, Ms. Madden was moved to primarily work with Dr. Jesse Chrastil. *Id.*, ¶ 46. Ms. Madden was moved despite her proven efficiency and experience with Dr. Peace's cases. Docket No. 110 at 10, ¶ 11. Dr. Peace warned Panorama that this reassignment would harm patient care, reduce revenue, and constituted retaliation. *Id.* Around this time, Panorama was

conducting a reduction in force that affected non-dedicated PAs, including Ms. Madden. Docket No. 109 at 9, ¶ 48. Ms. Madden was moved because she desired a consistent schedule that provided consistent income. *Id.*, ¶ 49. Sheila Sullivan, who was responsible for assigning PAs to Panorama physicians for surgical coverage, informed Dr. Peace of Ms. Madden's reassignment. *Id.*, ¶ 47. Dr. Peace proposed alternative PA staffing assignments and Panorama rejected those proposals. Docket No. 110 at 10, ¶ 12. Ms. Sullivan proposed that Dr. Peace work with PA Rachel White after Ms. Madden had been moved. Docket No. 109 at 10, ¶ 50. Dr. Peace had never worked with Ms. White. *Id.*, ¶ 51. Dr. Peace did not want to work with Ms. White due to efficiency and sanitary reasons and because other physicians had refused to work with her. *Id.*.

On or around December 1, 2023, Dr. Peace and Drew Neumeyer, Panorama's Chief Executive Officer, discussed, among other things, the need to provide PAs a consistent schedule and that Dr. Peace was not paying for a dedicated PA. *Id.*, ¶ 52. Dr. Peace told Mr. Neumeyer that he was willing to pay for a dedicated PA one day per week, even if he was away, and Mr. Neumeyer said he would look into it. *Id.*, ¶ 53.

Between December 2023 and June 2024, Dr. Peace would at times use SAs and at other times use PAs. *Id.*, ¶ 54. None of these PAs or SAs were dedicated PAs or SAs. *Id.*, ¶ 55. As of June 5, 2024, Panorama was stretched thin for PAs, which limited the number of non-dedicated PAs that were available to assist Dr. Peace for his upcoming July surgeries. *Id.*, ¶ 56.

On June 13, 2024, Dr. Peace canceled his surgeries that were scheduled for July 24 and July 31, 2024. *Id.* at 11, ¶ 57. Dr. Peace was uncomfortable operating with

the PA assigned to the July 24, 2024 surgeries because he did not know who she was, what her credentials and experience were, or whether she had assisted in a total joint surgery before. *Id.*, ¶ 58. Dr. Peace was uncomfortable operating with the PA scheduled for the July 31, 2024 surgeries because of prior wound dehiscence issues. *Id.*, ¶ 59. In the same e-mail chain where Dr. Peace canceled his surgeries, he accused Ms. Sullivan and other Panorama staff members of retaliating against him, asking "is this just another instance of retaliation against me because I have a lawsuit pending against Panorama?" *Id.*, ¶ 60. Dr. Peace also said to Ms. Sullivan in his email that, "I have a very difficult time believing that you as head PA had 'no idea' that this was happening, since you personally orchestrate every single PA – provider schedule in this practice." *Id.*, ¶ 61. Ms. Sullivan responded that his "accusations toward me make me uncomfortable." *Id.* ¶ 62. Dr. Peace responded that he "feels uncomfortable being lied to on multiple accounts." *Id.*, ¶ 63. Dr. Peace also canceled his surgeries scheduled for August 14, 2024, again due to being uncomfortable with his assigned PA. *Id.* at 12, ¶ 64. Panorama was still experiencing PA staffing shortages at this time. *Id.*

On July 12, 2024, Dr. Peace had a conversation with Mr. Neumeyer, Dr. Seemann, and others. *Id.*, ¶ 65. During this conversation, they discussed patients' concerns regarding Dr. Peace's surgery cancellations, that Dr. Peace must communicate concerns regarding the quality of the PAs or SAs he was assigned, and Dr. Peace' willingness to pay for a dedicated PA. *Id.* Dr. Peace explained that, if he was unable to pay for a PA through overhead, then he would write a check for the PA's services. *Id.*, ¶ 66. Mr. Neumeyer agreed to follow up with Dr. Peace regarding a dedicated PA and what that arrangement would look like. *Id.* On July 12, 2024, Dr.

Peace also requested that his schedule be updated to accommodate his military commitments, among other reasons. Docket No. 110 at 10, ¶ 13. Dr. Jeremy Kinder, a physician with Panorama, called Dr. Peace's request "asinine." *Id.*

On or around July 24, 2024, Mr. Neumeyer asked Ms. Madden if she would be willing to be Dr. Peace's PA, which request she declined. Docket No. 109 at 12, ¶ 67. After Ms. Madden declined, Mr. Neumeyer explained to Dr. Peace that Panorama was glad to hire a dedicated PA for Dr. Peace, who Dr. Peace would pay directly. *Id.*, ¶ 68. Mr. Neumeyer stated that Panorama would post a position for Dr. Peace's dedicated PA while it figured out how Dr. Peace could pay for a dedicated PA, in light of Dr. Peace being negative in the salary schedule, which created liability and tax issues. *Id.*, ¶ 69. In July 2024, Panorama posted a position for a PA. *Id.* at 13, ¶ 70.

On August 5, 2024, Mr. Neumeyer e-mailed Dr. Peace to follow up on an arrangement for compensating Dr. Peace's dedicated PA. *Id.*, ¶ 71. Panorama proposed that it would pay the PA on behalf of Dr. Peace and reduce Dr. Peace's OrthoColorado distributions accordingly. *Id*. Dr. Peace rejected Panorama's proposal. *Id.*, ¶ 72. Mr. Neumeyer responded that he would provide other options for PA support. *Id.* Mr. Neumeyer also stated that if Dr. Peace had any ideas that would not make Dr. Peace's practice income more negative that he would appreciate those ideas. *Id.* Dr. Peace accused Dr. Neumeyer of retaliating against him and suggested that Panorama reduce his overhead by 50% in consideration for the CommonSpirit position. *Id.*, ¶ 73. Dr. Peace had previously requested this overhead reduction, which the Board denied. *Id.*

Around July 2024, Mr. Neumeyer learned from Dr. Schneider, a Panorama doctor, that Dr. Peace maintained surgical notes for a patient who may have been experiencing surgical concerns arising from x-ray issues at OrthoColorado Hospital, which is part of CommonSpirit. *Id.* at 6, ¶ 24. Mr. Neumeyer directed Dr. Schneider to inform Panorama's Clinical Governance Board of the existence of those notes. *Id.*, ¶ 25. The Clinical Governance Board requested that Dr. Jared Foran, the lead for Dr. Peace's service line at Panorama, inform the CEO of OrthoColorado Hospital of the notes, out of concerns for patient safety. *Id.*, ¶ 26. An OrthoColorado Hospital employee told Dr. Peace that Dr. Foran had represented to the employee and others that Dr. Foran had accessed and read at least two of Dr. Peace's patient's medical charts. *Id.*, ¶ 27. Dr. Peace reported what he had been told to the appropriate officers at CommonSpirit and Panorama. *Id.*, ¶ 28. CommonSpirit investigated Dr. Peace's report and later informed Mr. Neumeyer that it had completed its investigation and found no evidence that Dr. Foran had committed a HIPAA violation. *Id.*, ¶ 29.

Dr. Peace notified Panorama on September 25, 2024 that he would be going on prolonged military leave to begin on October 1, 2024. *Id.* at 14, ¶ 80. The first recorded discussion of Dr. Peace's termination occurred during an October 2, 2024 Panorama Board meeting after Dr. Peace had already left for his military leave. Docket No. 110 at 10, ¶ 14. The October 2, 2024 termination notes referenced a breakdown in settlement agreements and ongoing litigation issues, not Dr. Peace's financial performance or behavioral concerns. *Id.* The contemporaneous record of termination, including the November 6, 2024 Panorama Board meeting minutes, contain no mention of Dr. Peace's behavior or performance. *Id.* at 10-11, ¶ 15. Panorama terminated Dr.

Peace's employment on December 2, 2024. Docket No. 109 at 14, ¶ 81; Docket No. 110 at 11, ¶ 17. The termination notice did not mention the cause for termination, such as performance or behavior. Docket No. 110 at 11, ¶ 16. At no point before termination did Dr. Peace receive a reprimand or warning concerning his behavior as an employee-shareholder. *Id.*, ¶ 18.

Dr. Peace was the only employee-shareholder in September 2024 with a negative salary in at least the hundred-thousands, which amassed at least as early as 2023. Docket No. 109 at 13-14, ¶¶ 77-78. An employee-shareholder at Panorama earns a "negative salary" when that employee-shareholder is losing money for the practice due to failing to generate enough income through his work to cover his own compensation and overhead allocation. *Id.* at 14, ¶ 79. A "deficit" occurs when an employee-shareholder's salary is less than the amount of money the employee-shareholder receives as compensation throughout the year, which is known as a "draw." *Id.*

## III. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). "Where . . . a defendant moves for summary judgment to test an affirmative defense, the defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. Once the defendant makes this initial showing, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff cannot meet this burden, the affirmative defense bars [his] claim, and the defendant is then entitled to summary judgment as a matter of law." *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011) (alterations, internal quotations, and citations omitted).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To defeat a motion for summary judgment, the nonmovant's evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise," and "[u]nsubstantiated allegations carry no probative weight." *SEC v. GenAudio Inc.*, 32 F.4th 902, 920-21 (10th Cir.

2022) (citations and alterations omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Bausman*, 252 F.3d at 1115.

## IV. ANALYSIS

Panorama moves for partial summary judgment on Counts II and III in Dr. Peace's amended complaint. Docket No. 109 at 1. In Count II, Dr. Peace alleges that Panorama retaliated against him in violation of USERRA, 38 U.S.C. § 4311(b). Docket No. 89 at 12-13. In Count III, Dr. Peace alleges that Panorama failed to reemploy him in violation of USERRA, 38 U.S.C. § 4312(a). *Id.* at 13-14.

### A. Count II – USERRA Retaliation Claim

Section 4311(b) of USERRA provides in relevant part:

> An employer may not discriminate in employment against or take any adverse employment action or other retaliatory action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

38 U.S.C. § 4311(b). An employer shall be "considered to have engaged" in the actions prohibited by § 4311(b):

> if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

*Id.*, § 4311(c)(2). An employee that brings a retaliation claim under USERRA must satisfy a two-party inquiry. *Porter v. Trans States Holdings, Inc.*, 2025 WL 3772561, at

*3 (10th Cir. Dec. 31, 2025). First, the employee bears the initial burden of showing that the assertion of his USERRA rights "was a motivating factor in the adverse employment action." *See id*. Second, if the employee meets this initial burden, the burden shifts to the employer "to prove that it would have taken the same action" even if the employee had not asserted his USERRA rights. *Id.* (internal quotation and citation omitted).

***1. Dr. Peace's Initial Burden***

In order to satisfy his initial burden, Dr. Peace must show that he suffered an adverse employment action. Panorama argues that the only cognizable adverse action is Dr. Peace's termination. Docket No. 109 at 15. Dr. Peace responds that Dr. Foran accessing the charts of Dr. Peace's patient constitutes an adverse action under USERRA. Docket No. 110 at 13.

An employment action is adverse "if a plaintiff can demonstrate that []he experienced some harm respecting an identifiable term or condition of employment as a result of that action." *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1216 (10th Cir. 2025) (internal quotation, emphasis, and citation omitted).[2] Here, Dr. Peace argues that Dr. Foran's access was "part of an escalating pattern of antagonistic and retaliatory behavior effectuated by Defendant." Docket No. 110 at 13. Dr. Peace argues that Dr. Foran accessed the chart to "substantiate a for-cause termination" and that this was the first time that Dr. Peace "had known of anyone to improperly access patient charts." *Id.* Dr. Peace's arguments, however, fail to

[2] The Court relies on case law concerning Title VII as well as USERRA as the two statutes are "very similar." *Staub v. Proctor Hosp.,* 562 U.S. 411, 417 (2011).

demonstrate that Dr. Foran's chart access affected a term or condition of his employment. While Dr. Peace contends that Dr. Foran accessed the charts to justify Dr. Peace's for-cause termination, Dr. Peace cites no evidence other than speculation in his deposition. Accordingly, the Court finds that Dr. Foran's access of the patient charts does not constitute an adverse action.

The Court turns to Dr. Peace's termination, which Panorama does not contest constitutes an adverse employment action. *See* Docket No. 109 at 18-23. Panorama also does not contest that Dr. Peace asserted his rights under USERRA by filing this case and notifying Panorama that it was violating Dr. Peace's right under USERRA by requiring overhead contributions while he was on military leave. *See id.* at 18. Thus, the question is whether Dr. Peace has met his burden to raise a genuine dispute of material fact regarding whether the assertion of his USERRA rights was a motivating factor in Panorama's decision to terminate his employment. *See Porter*, 2025 WL 3772561, at *3.

Panorama argues that Dr. Peace is not entitled to an "inference of retaliatory motive based on temporal proximity" because Dr. Peace's protected activity was not close in time to his termination. *See* Docket No. 109 at 19. Panorama argues that Dr. Peace cannot establish that Panorama has expressed hostility toward servicemembers because the undisputed facts demonstrate that Dr. Peace's overhead obligations were a "function of the Compensation Plan" and Panorama nevertheless "provided Dr. Peace with a reduction of his overhead for some of the time he took military leave." *Id.* Panorama argues that Panorama has not "treated any similarly situated employees better than Dr. Peace," namely, "because there are no similarly situated employee-

shareholders." *Id.* at 20. Finally, Panorama contends that the undisputed facts show "no inconsistences" between Panorama's proffered reasons for Dr. Peace's termination. *Id.*

Dr. Peace responds that his termination was a "culmination of steady escalation of retaliatory conduct." Docket No. 110 at 14. Dr. Peace contends this "escalation of retaliatory conduct" was designed to negatively impact Dr. Peace's financial performance such that it would result in his termination. *See id.* at 17-18. Specifically, Dr. Peace notes that Panorama eliminated the evening/extended clinics, reassigned Ms. Madden, Dr. Peace's preferred PA, and encouraged Panorama physicians to apply for the CommonSpirit position with a promise of a 50% reduction in overhead that was ultimately not extended to Dr. Peace. *Id.* at 17-18. He contends that there is evidence of Panorama's hostility and that the record "shows disparate treatment of similarly situated employees." *Id.* at 15. Dr. Peace argues that there are "several material discrepancies between Panorama's proffered reason for terminating Dr. Peace" thus demonstrating pretext. *Id.* at 16.

"A retaliatory motive may be inferred from a close temporal proximity between an employee's protected conduct and an employer's adverse employment action." *Durant v. MillerCoors, LLC*, 415 F. App'x 927, 930 (10th Cir. 2011) (unpublished) (internal quotations and citation omitted). Panorama focuses on the lack of temporal proximity between Dr. Peace's assertion of his USERRA rights and his termination. *See* Docket No. 109 at 19-20. However, Dr. Peace alleges an "escalating pattern of antagonistic and retaliatory conduct," leading up to his termination, that includes the elimination of the evening/extended clinics, Ms. Madden's reassignment, and the issues

with Dr. Peace's position at CommonSpirit. *See* Docket No. 117 at 2, 11-15. All of this conduct occurred after Dr. Peace had filed his lawsuit against Panorama in April 2023 and as he was actively litigating his USERRA claim against Panorama.

A retaliatory motive can be inferred from a pattern of retaliatory conduct that commences within three months of a protected action. *See Durant*, 415 F. App'x at 930; *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008) ("a pattern of retaliatory conduct that begins soon after the protected activity and only culminates later in actual discharge may sometimes provide temporal proximity sufficient to infer retaliatory motive and preclude summary judgment") (internal quotation, alteration, and citations omitted).

It is undisputed that Dr. Peace asserted his USERRA rights between 2021 and September 2024, accusing Panorama of violating USERRA by requiring that he pay overhead while on military leave. Docket No. 109 at 4, ¶ 14; Docket No. 110 at 8, ¶ 1. Dr. Peace also asserted his USERRA rights by filing this lawsuit on April 24, 2023. Docket No. 109 at 4, ¶ 16. The litigation was obviously ongoing up until his termination. In the midst of Dr. Peace's complaints of USERRA violations, Panorama did not reduce Dr. Peace's overhead contributions in consideration for his CommonSpirit position and despite Panorama encouraging its physicians to apply. Docket No. 110 at 9, ¶¶ 2, 3, 6. There is also a dispute as to whether Panorama promised Dr. Peace that he would receive a reduced overhead obligation upon accepting the CommonSpirit position and thereafter reneged on that promise when Dr. Peace accepted the position.

During this time, in November 2023, Panorama also discontinued Panorama's evening/extended clinics, which was Dr. Peace's primary means of offsetting time and

revenue he lost while away on military service and while at CommonSpirit. Docket No. 109 at 7, ¶ 36; Docket No. 110 at 9-10, ¶¶ 9-10. The fact that other physicians were affected by this decision does not mean that a reasonable jury could not find that Panorama's decision was meant to harm Dr. Peace. In this same month, Panorama reassigned Ms. Madden, who was Dr. Peace's PA for years and had proven efficiency and experience in Dr. Peace's cases. Docket No. 109 at 9, ¶¶ 45-46; Docket No. 110 at 10, ¶ 11. The issues with PA staffing persisted until June and July 2024, when Panorama assigned PAs that Dr. Peace had concerns with. *See* Docket No. 109 at 11-12, ¶¶ 57-66. Finally, on October 2, 2024, the Panorama Board discussed Dr. Peace's termination. Docket No. 110 at 10, ¶ 14. Dr. Peace had already begun his military leave at this point. *Id.* The Board notes reflect a discussion of litigation issues and settlement breakdowns regarding Dr. Peace, but do not mention his financial performance or behavioral issues. *Id.* Panorama terminated Dr. Peace on December 2, 2024. Docket No. 109 at 14, ¶ 81. There are genuine disputes of material fact as to whether these incidents were examples of Panorama retaliating against Dr. Peace for his exercise of USERRA rights, particularly given that his lawsuit against Panorama was ongoing.

Viewing this evidence in the light most favorable to Dr. Peace, a reasonable jury could conclude that these actions demonstrated Panorama's retaliatory motive that culminated in Dr. Peace's termination. Thus, the Court finds that Dr. Peace has carried his initial burden of establishing a genuine issue of material fact as to whether his protected activity was a motivating factor in his termination.

### *2. Panorama's Burden*

Panorama now has the burden to show that it would have terminated Dr. Peace even if he had not asserted his USERRA rights. *See Porter*, 2025 WL 3772561, at *3. "[U]nder USERRA, both the burden of production and the burden of persuasion shift to the employer once the employee meets his initial burden." *See id.* at *7 (internal quotation and citation omitted). To prevail on summary judgment, Panorama must "establish not just that it had a legitimate basis for taking the adverse employment action, but as a matter of uncontroverted fact that it would have taken the adverse employment action regardless of the employee's military status." *Id*. (citation omitted). Therefore, the burden is not on Dr. Peace to "disprove [the employer's] asserted legitimate reasons" for the adverse action, but rather it is Panorama's burden to establish it is a matter of uncontroverted fact that it would have taken the same course of conduct even if Dr. Peace had not alleged violations of USERRA. *See id.*

Panorama asserts that it terminated Dr. Peace on account of his "financial performance and poor behavior." Docket No. 109 at 20. Regarding financial performance, Panorama points to Dr. Peace's negative salary and the fact that he was "*losing money* for the practice." *Id.* at 21. Panorama argues that this was due to Dr. Peace working for CommonSpirit, "which essentially decreased the number of hours that he was available to work for Panorama and therefore generate income." *Id.* Panorama acknowledges that Dr. Peace relied on the evening/extended clinics "to make up the time he spent working at CommonSpirit," but contends that it only discontinued those clinics due to a "lack of patient demand, because other Panorama employees did not like working those shifts, and because maintaining those clinics did

not make sense financially." *Id.* Panorama also argues that Dr. Peace's objections to the PA staffing assignments affected his "financial performance." *Id.* at 22.[3]

Dr. Peace has produced evidence that a reasonable jury could find controverts Panorama's assertion that it would have engaged in the same course of conduct, culminating in termination, even if Dr. Peace had not asserted his USERRA rights. Specifically, there is a genuine dispute of material fact as to whether Dr. Peace's negative salary, the purported reason for his termination, is tied to Panorama's conduct and an underlying motive to retaliate against Dr. Peace. It is undisputed that Panorama encouraged its physicians to apply for the CommonSpirit position. Docket No. 110 at 9, ¶ 2. Despite wanting its physicians to apply for the CommonSpirit position, when Dr. Peace received the position, he received no reduction in overhead in exchange for working for CommonSpirit. *Id.*, ¶ 6. Dr. Peace has further raised a dispute as to whether he was promised an overhead reduction and whether similarly situated physicians received such a reduction. Panorama also eliminated evening/extended clinics, which was Dr. Peace's primary means of generating income to make up for

---

[3] The Court finds that Panorama has established as a matter of uncontroverted fact that it would have addressed the PA staffing issues the way it did even if Dr. Peace had not asserted his USERRA rights. It is undisputed that Ms. Madden was moved to primarily work with another doctor because she desired a more consistent schedule and income. Docket No. 109 at 9, ¶ 49. After Ms. Madden was reassigned, Panorama rejected Dr. Peace's proposed PA assignments, but also offered alternative staffing arrangements that were rejected by Dr. Peace. *See id.* at 11-13, ¶¶ 57-73. Given that Dr. Peace only used non-dedicated PAs and SAs, that there was a staffing shortage at Panorama for PAs and SAs, and Dr. Peace refused to use the PAs and SAs offered by Panorama, the Court finds that Panorama has established as a matter of uncontroverted fact that it would have made the PA and SA staffing decisions regardless of Dr. Peace's protected activity. *Id.* at 9-11, ¶¶ 43, 51, 56-59.

negative salary he was accumulating from his time at CommonSpirit and military leave. *Id.*t 9-10, ¶ 9.

Panorama also fails to show that it is a matter of uncontroverted fact Dr. Peace was terminated for his behavioral issues. Panorama frames Dr. Peace's behavioral issues as being violative of its Standards of Conduct. *See* Docket No. 109 at 23. The Standards of Conduct prohibit excessively threatening language, the use of intimidation tactics, and making threats. *Id.* at 7, ¶¶ 33-35. Panorama's examples of Dr. Peace's "threatening remarks," *see* Docket No. 109 at 23, are not uncontroverted evidence that he violated the Standards of Conduct. A reasonable jury could conclude that Dr. Peace's comments accusing Panorama of retaliation – such as his question to Ms. Sullivan, "is this just another instance of retaliation against me because I have a lawsuit pending against Panorama?", *id.* at 11, ¶ 60, – do not rise to the level of a threatening remark, but rather were appropriate reactions to suspicious conduct. The fact that Panorama only cites comments in which Dr. Peace accuses Panorama of retaliation as being violative of the Standards of Conduct could also lead a reasonable jury to conclude that Panorama terminated Dr. Peace for asserting his USERRA rights rather than for his behavioral issues. *See Gower v. IKON Off. Sols., Inc.*, 155 F. Supp. 2d 1268, 1274 (D. Kan. 2001) (denying summary judgment where "there is still a question of fact concerning whether plaintiff's allegedly insubordinate behavior was the true reason for defendant's actions or whether the contents of plaintiff's complaints motivated defendant's decisions").

Furthermore, there is no documentation that Dr. Peace was terminated due to his financial performance or behavior. It is undisputed that the first recorded discussion

regarding his termination was the October 2, 2024 board meeting minutes. Docket No. 110 at 10, ¶ 14. These minutes only referenced a breakdown in settlement agreements between Dr. Peace and Panorama and ongoing litigation issues. *Id.* The November 6, 2024 board meeting minutes that also discussed Dr. Peace's termination did not mention Dr. Peace's financial performance or behavior. *Id.* at 10-11, ¶ 15. Dr. Peace's termination letter did not mention the cause for termination; he was terminated without cause and did not receive any reprimands or warnings. *Id.* at 11, ¶¶ 16, 18. There is no record of Panorama finding that Dr. Peace violated the Standards of Conduct. Based on these facts, a reasonable jury could conclude that Panorama terminated Dr. Peace due to assertion of his USERRA rights, such that Panorama's other reasons are pretextual. *See Porter*, 2025 WL 3772561, at *7 (holding that the employer failed to carry its burden under USERRA where "there is little evidence in the record corroborating" the purported reason for the employee's termination).

Because Panorama has failed to show, as a matter of uncontroverted fact, that it would have taken its course of action against Dr. Peace even if he had not exercised his USERRA rights, the Court will deny its motion for summary judgment on Count II.

### B. <u>Count III – USERRA Failure to Reemploy Claim</u>

Pursuant to 38 U.S.C. § 4312, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits" if he is a covered employee. *See* 38 U.S.C. § 4312(a). USERRA concedes that Dr. Peace is a covered employee "who was entitled to reemployment." Docket No. 109 at 23. However, an employer is not required to reemploy a covered employee, provided:

> (A) the employer's circumstances have so changed as to make such reemployment impossible or unreasonable;
>
> (B) in the case of a person entitled to reemployment under subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313, such employment would impose an undue hardship on the employer; or
>
> (C) the employment from which the person leaves to serve in the uniformed services is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period.

38 U.S.C.A. § 4312(d)(1). These employer defenses "are affirmative ones, and the employer carries the burden to prove by a preponderance of the evidence." 20 C.F.R. § 1002.139(d).

Panorama contends it is entitled to the defense listed in § 4312(d)(1)(A), arguing that "Panorama's circumstances had changed such that it would be unreasonable to rehire" Dr. Peace. Docket No. 109 at 23-24. Specifically, Panorama argues that it terminated Dr. Peace "for financial performance and behavioral issues that occurred prior to him taking his prolonged military leave, which culminated over a period of months." *Id.* at 24. Panorama argues that it "began discussing potentially terminating Dr. Peace no later than September 6, 2024 – before Dr. Peace began his prolonged leave on October 1, 2024." *Id.* at 24-25.

It is unlikely that the changed circumstances defense applies here, as it "is primarily directed at *structural* changes to an employer's workforce (e.g., layoffs) that affect the employer's very ability to reemploy the returning servicemember." *United States v. Nevada*, 2012 WL 1517296, at *5 (D. Nev. Apr. 30, 2012); *but see Snyder v. Nabors Garage Doors, LLC*, 2022 WL 1231696, at *4 (N.D. Ga. Mar. 15, 2022) (finding that, under USERRA, "it would be unreasonable to require reemployment of an employee who had been fired for cause based on actions taken before reemployment")

(citation omitted). Even if the defense did apply, the facts Panorama relies on in support of its changed circumstances defense are disputed. Panorama relies on the fact that Dr. Peace was fired for financial performance and behavioral issues. Even if financial performance and behavioral issues constitute structural barriers to Panorama's ability to reemploy Dr. Peace, it is disputed whether Dr. Peace was fired for these reasons. Rather, a reasonable jury could conclude that Dr. Peace was fired, not for any structural reason, but because he exercised his USERRA rights. Accordingly, the Court will deny summary judgment for Panorama on Count III.

## V. CONCLUSION

Therefore, it is

**ORDERED** that the Panorama's Motion for Partial Summary Judgment [Docket No. 109] is **DENIED**.

DATED August 31, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge